2011 Ark. App. 352

**George David REED, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–961.**

Court of Appeals of Arkansas.

May 11, 2011.

Kathleen Adell Ralston, Bentonville, for appellant.

Dustin McDaniel, Atty. Gen., Kathryn Henry, Little Rock, for appellee.

RITA W. GRUBER, Judge.

Appellant George David Reed was convicted by a jury of first-degree battery and sentenced to twenty years' imprisonment for the conviction and a two-year enhancement for the use of a firearm. He raises three points for reversal. We find no error and affirm his conviction.

## I. *Sufficiency of the Evidence*

We first consider appellant's challenge to the sufficiency of the evidence. Appel-

lant was convicted of first-degree battery pursuant to Ark.Code Ann. § 5–13–201(a)(3) (Supp.2009), which provides that a person commits battery in the first degree if the person "causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life." Specifically, appellant argues that the witnesses to the event, including the victim, testified that appellant had no desire to harm the victim and |₂therefore that the State's case was based entirely upon speculation and not upon sufficient evidence.

The test for determining sufficiency of the evidence is whether there is substantial evidence, direct or circumstantial, to support the verdict. *Johnson v. State,* 337 Ark. 196, 987 S.W.2d 694 (1999). On appeal, we consider only the evidence that supports the verdict, viewing the evidence in the light most favorable to the State. *LeFever v. State,* 91 Ark.App. 86, 208 S.W.3d 812 (2005). Evidence is substantial if it is forceful enough to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Harmon v. State,* 340 Ark. 18, 22, 8 S.W.3d 472, 474 (2000). We do not weigh the evidence presented at trial, as that is a matter for the fact-finder. *Freeman v. State,* 331 Ark. 130, 959 S.W.2d 400 (1998). Witness credibility is an issue for the fact-finder, who is free to believe all or a portion of any witness's testimony and whose duty it is to resolve questions of conflicting testimony and inconsistent evidence. *LeFever,* 91 Ark.App. at 89, 208 S.W.3d at 815.

Nineteen-year-old Austin Guzman and appellant's daughter, seventeen-year-old Morgan Reed, began dating in April 2007 after meeting at Calvary Tabernacle Pentecostal Church, where their respective families attended services. A month or so after Austin and Morgan began dating,

Morgan's mother discovered her diary, in which Morgan had written that Austin had been sneaking through her bedroom window at night and the two had been engaging in sexual intercourse. Shortly thereafter, a meeting was held at church with Austin, |₃Morgan, both of their parents, and several pastors, resulting in the establishment of rules for Austin and Morgan's continued dating relationship. Two of those rules were that they were allowed to see each other only with supervision and Austin was not allowed to visit the Reed residence without one of Morgan's parents, either Sharon or George Reed, being present.

During June and July 2007, Morgan and Austin disregarded the new rules and met at the Reeds' home while Morgan's parents were not there. On July 31, 2007, Morgan called Austin around 8:00 a.m. to let him know that her parents were gone and that it was safe to come over. At about 9:00 a.m., Austin parked his car down the road, Morgan picked him up, and they went to the Reeds' house. Midmorning, a neighbor saw Austin's car parked down the street from the Reeds' home and called appellant to let him know. Appellant drove home, arriving about 10:30 a.m. He retrieved a pool cue and proceeded to Morgan's bedroom. Morgan and Austin woke up when they heard appellant's truck pull up outside. Austin grabbed his belongings and hid in Morgan's closet. Appellant came into Morgan's room and repeatedly asked, "Where is he?" After denying that Austin was there, Morgan finally pointed to the closet. Appellant opened the closet door and began beating Austin with the pool cue. Although Morgan testified at trial that she did not recall Austin saying anything during the event, she told the investigator shortly after the incident that Austin repeatedly asked her father to stop and told

him that he would leave the house. Austin also told the investigator that he continued to say "stop, please sir stop" but that appellant kept hitting him. Austin put his hands on his head in an attempt to block the blows. Although Austin denied remembering anything appellant said during the beating or the events that day, he told the investigator two weeks after the incident that, while appellant was hitting him with the pool cue, appellant kept asking him, "How do you like it? How do you like it?" Austin also told the investigator that, after appellant threw down the pool cue and left the room, he said, "Let's finish this." According to Austin's statement to the investigator, Morgan told Austin that her dad was probably going to get his gun.

When appellant left the room, Austin got out of the closet, closed the bedroom door, and began trying to place a dresser in front of the door to keep appellant out. Unable to move the dresser, Austin stood behind the door pushing against it as appellant stood on the other side and tried to push the door open. Appellant managed only to get the door open an inch. Appellant then fired four shots through the bedroom door: the first shot entered the door at an upward angle while Austin was standing behind it. While Austin was still trying to hold the door shut, he crouched down in a final attempt to move the dresser. One of the next three shots, which was fired through the door at a downward angle, hit Austin in the back, rendering him a paraplegic. Austin fell to the floor, saying, "I've been shot." According to Austin's statement to the investigator, appellant responded, "Come out. Let's finish this." Austin then told Morgan to call 911, and asked her to look out the window because he was worried appellant would come around the window to get a direct shot at him.

At trial, Morgan testified that she was not afraid that her dad would continue shooting because she knew he would stop when he heard Austin say that he had been shot. However, Morgan told the investigator shortly after the incident that her dad would not have gotten the gun if he did not want to kill Austin and that she thought her dad would have killed him if she had not called 911. She also said that, if Austin had come out of the room, her dad would have "finished him off." Mrs. Reed arrived home shortly thereafter, and the emergency personnel arrived at 11:20 a.m.

Austin required staples in his scalp for the head wound caused by the pool cue and two surgeries on his back. He is a paraplegic and remains in a wheelchair. Austin and Morgan have remained in a relationship, and Austin and appellant have mended their relationship.

First-degree battery under Ark. Code Ann. section 5–13–201(a)(3) involves actions that create at least some risk of death and which, therefore, evidence a mental state on the part of the accused to engage in some life-threatening activity against the victim. *Tigue v. State*, 319 Ark. 147, 152, 889 S.W.2d 760, 762 (1994). While Austin, Morgan, and appellant may now have mended their relationships and decided to move forward from this tragic event, their decision regarding how to view this incident does not change the facts surrounding the incident. Viewed in the light most favorable to the State, the evidence is substantial to support the jury's finding that appellant caused serious physical injury to Austin under circumstances manifesting extreme indifference to the value of human life. Appellant shot a gun through a door when he knew Austin was directly on the other side of it. He was fortunate that his daughter was not in the way of an errant bullet. Both Austin and

Morgan told the investigator that they thought appellant intended to kill Austin and would have done so if Morgan had not called 911. We hold that substantial evidence supports the jury's verdict.

## II. *Amendment to the Information*

For his second point on appeal, appellant contends that the circuit court erred in granting the State's motion to amend the information at the close of its case in chief. Appellant argues that this prejudiced his case and violated Rule 22.1(c) of the Arkansas Rules of Criminal Procedure. Arkansas Code Annotated section 16–85–407 (Repl.2005) allows the State to amend the information up to the time the jury has been sworn as long as it does not change the nature or degree of the crime charged. *Ward v. State,* 97 Ark.App. 294, 296, 248 S.W.3d 489, 491 (2007).

The initial information in this case charged appellant with first-degree battery under Ark.Code Ann. § 5–13–201(a)(1), alleging that appellant "fired four shots through a door in a room occupied by [Austin] Guzman and Morgan Reed with the purpose to cause physical injury to [Austin] and caused serious physical injury" to him and that appellant caused serious physical injury to Austin "under circumstances manifesting extreme indifference to the value of human life." An amendment on October 7, 2009, amended the code section to first-degree battery under Ark.Code Ann. § 5–13–201(a) and alleged the following: appellant "fired four shots through a door into a room occupied by [Austin] Guzman and Morgan Reed with the purpose to cause serious physical injury to [Austin] and caused serious physical injury to [Austin] Guzman by means of a deadly weapon"; appellant fired four shots into a room occupied by Austin and Morgan and "caused serious physical injury to [Austin] Guzman under circum-

stances manifesting extreme indifference to the value of human life"; and appellant fired four shots into a room occupied by Austin and Morgan "with the purpose of causing physical injury to [Austin] Guzman and caused physical injury to [Austin] Guzman by means of a firearm." The October amendment also added an enhancement for the use of a firearm under Ark.Code Ann. § 16–90–120 (Repl.2006). On February 1, 2010, nine days before trial, the State again amended the information, limiting the first-degree-battery charge to section 5–13–201(a)(3), providing that appellant caused serious physical injury to Austin "under circumstances manifesting extreme indifference to the value of human life" and including allegations in that charge that appellant "beat [Austin] with a pool cue in the head and body" in addition to firing four shots through the door. Finally, on the day of trial at the close of the State's evidence, the State moved to amend the information again—this time, to exclude the allegations about the pool cue. It is this amendment that appellant challenges on appeal.

To merit reversal on appeal, in addition to showing that the amendment violated Ark.Code Ann. § 16–85–407, appellant must show that he was prejudiced by the amendment. *Ward,* 97 Ark.App. at 296, 248 S.W.3d at 491–92. Appellant contends that the State's amendment effected a severance of offenses under Ark. R.Crim. P. 22.1(c). Pursuant to Rule 22.1(c), a motion to sever offenses must be made before trial unless the defendant consents. We disagree with appellant that the amendment constituted a severance of offenses. The only offense charged in this case was first-degree battery under Ark. Code Ann. § 5–13–201(a)(3). There was no additional offense to sever. Further, the amendment did not change the nature or degree of this crime but merely clarified

the manner in which the offense was committed. *See Hill v. State*, 370 Ark. 102, 257 S.W.3d 534 (2007) (holding that amending only the manner of the alleged commission of the crime did not change the nature of the offense). Thus, no violation of the statute occurred.

■ Moreover, we reject appellant's argument that he was prejudiced by the pool-cue evidence, which, he contends, would have been put on in a different manner had it merely been introduced as part of the *res gestae* of the event. The circuit court stated, and appellant admits, that the evidence would have been introduced in any case as part of the events leading up to the shooting whether it was included in the charging instrument or not. *See Bledsoe v. State*, 344 Ark. 86, 90–91, 39 S.W.3d 760, 763–64 (2001) (holding evidence admissible under the *res gestae* rule, where separate incidents comprise one continuing criminal episode or an overall criminal transaction or are intermingled with the crime actually charged). Accordingly, appellant's argument on this point is meritless.

## III. *Instructions for Lesser–Included Offenses*

Finally, appellant contends that the circuit court erred in refusing to give his proffered instructions on second- and third-degree battery as lesser-included offenses of first-degree battery. Of relevance to this case, an offense is a lesser-included offense if it is established by proof of the same or less than all of the elements of the offense charged or differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person or a lesser kind of culpable mental state suffices to establish the offense's commission. Ark.Code Ann. § 5–1–110(b) (Repl.2006). The first-degree battery instruction given in this case provided that to sustain the charge the State must prove that appellant "caused serious physical injury to Austin Guzman under circumstances manifesting extreme indifference to the value of human life." Ark.Code Ann. § 5–13–201(a)(3).

■ An instruction on a lesser-included offense is appropriate when it is supported by even the slightest evidence. *Grillot v. State*, 353 Ark. 294, 318, 107 S.W.3d 136, 150 (2003). Once an offense is determined to be a lesser-included offense, the circuit court is obligated to instruct the jury on that offense only if there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the lesser-included offense. *Williams v. State*, 363 Ark. 395, 411, 214 S.W.3d 829, 838 (2005). We will not reverse a trial court's ruling on whether to submit a jury instruction absent an abuse of the trial court's discretion. *Sweet v. State*, 2011 Ark. 20, at 14, 370 S.W.3d 510, 521.

■ We reject appellant's argument that the circuit court abused its discretion in denying his second-degree-battery instruction. The proffered instruction required the State to prove the following: "George David Reed recklessly caused serious physical injury to Austin Guzman by means of a deadly weapon." The circuit court denied the instruction because it added an additional element to the offense charged: that is, a deadly weapon. Because proof of a deadly weapon was not an element of the first-degree-battery offense with which appellant was charged, the court found that the proffered instruction was not a lesser-included offense. Appellant argues that the State's allegation of an enhancement charge in its information made a deadly weapon an element of the crime because a firearm is a deadly weapon. Appellant is wrong. The offense charged was first-degree battery pursuant

to Ark.Code Ann. § 5–13–201(a)(3). The jury was not required to find that appellant employed a firearm in order to convict him of that offense. Nor was the jury required to apply the firearm enhancement if it convicted him of first-degree battery. The firearm enhancement was not an element of the first-degree-battery offense but was an additional sentence authorized by statute if appellant was convicted of first-degree battery and the jury determined that he employed a firearm during commission of that offense. Ark.Code Ann. § 16–90–120 (Repl.2006). Appellant provides no authority in support of his argument and we reject it.

Appellant also proffered the following third-degree-battery instruction: "That George David Reed, with the purpose of causing physical injury to Austin Guzman, caused physical injury to Austin Guzman." *See* Ark.Code Ann. § 5–13–203(a)(1) (Supp.2009). Appellant first argued to the circuit court that it should not allow the State to amend the information to exclude statements regarding his use of the pool cue in the commission of the crime charged because extensive evidence had already been introduced and the pool-cue evidence supported appellant's third-degree-battery instruction. After the court amended the information to exclude the pool-cue statements, appellant argued that he should still be entitled to the third-degree-battery instruction as it related to the injury that was caused by the pool cue since the evidence had already been introduced and the State characterized the pool cue to the jury as appellant's "first weapon." The court refused to give the third-degree instruction, stating that the "only way I think you could get that is if there was a separate charge of battery with a pool cue and there is not."

On appeal, appellant contends that the court should have given the instruction even without a separate charge of battery with a pool cue, contending that the mental state for purposefully causing an injury is less than the mental state required for having a state of mind manifesting extreme indifference to human life. Appellant cites *Brown v. State,* 74 Ark.App. 281, 47 S.W.3d 314 (2001), to support his argument. First, *Brown* does not stand for such a proposition. Second, and more importantly, appellant did not make this argument to the trial court. The only argument appellant made regarding the proffer of the third-degree-battery instruction concerned the evidence of and injury by the pool cue. Discussion centered on the court's ruling concerned the differing levels of injury—serious physical injury versus physical injury—between the first-degree and the third-degree instructions. Appellant made no argument regarding the firearm or the mental state required for the proffer of his third-degree-battery instruction. The circuit court did not consider the third-degree instruction as it related to evidence other than the evidence surrounding the pool cue. We will not consider arguments that are raised for the first time on appeal, and a party is bound on appeal by the nature and scope of the objections and arguments presented at trial. *Whitson v. State,* 314 Ark. 458, 466, 863 S.W.2d 794, 798 (1993); *Simmons v. State,* 90 Ark.App. 273, 278, 205 S.W.3d 194, 197 (2005). We affirm appellant's conviction.

Affirmed.

HART and MARTIN, JJ., agree.