
# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-13-225

|  |  |
|---|---|
| | **Opinion Delivered** February 19, 2014 |
| SHAUN LAMOND WASHINGTON<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION<br>[NO. CR2012-857] |
| V. | |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE<br><br>REVERSED AND REMANDED |

## BILL H. WALMSLEY, Judge

A Pulaski County jury found appellant Shaun Lamond Washington guilty of first-degree battery of his girlfriend's infant daughter M.D. (DOB: 01-07-2012), and he was sentenced to ten years' imprisonment. Washington argues that the trial court abused its discretion in denying his request to instruct the jury on third-degree battery. Because there was some evidence to support such instruction, we reverse and remand.

The evidence showed that on February 17, 2012, around 9:30 p.m., Shayla Dowd left M.D., along with her three-year-old son X.H., with Washington so that she could celebrate her birthday with a friend. Around noon on the following day, Dowd had not returned. Patsy Moore, Dowd's mother, arrived at Dowd's apartment to visit her grandchildren and discovered that M.D. was barely breathing. Washington explained that, just prior to Moore's arrival, M.D. had vomited after being fed and then she suddenly became limp. Moore told

SLIP OPINION

Washington to call 911. On the way to Arkansas Children's Hospital (ACH), a paramedic asked Washington about a bruise on M.D.'s forehead. Washington claimed that X.H. might have hit the baby with a toy truck the previous night.

Dr. Maria Theresa Esqueveil, a pediatrician at ACH, testified that M.D. displayed symptoms of having had a seizure, and x-rays later revealed that she had a fractured skull and intracranial bleeding. Dr. Esqueveil testified that it was not a simple linear fracture, but rather was split open, leaving a gap in the baby's head. M.D. also had extensive retinal hemorrhaging. Moreover, M.D. had three small bruises above her right eyebrow, a bruise under her left eye, bruises on her left knee and thigh, bruises on the rims of both ears and back part of her left ear, and two bruises on her back. In addition, both of M.D.'s hands were swollen, and she had bruises on the backs of her hands. There was a small laceration on M.D.'s lip, and she had bruising under her tongue. Dr. Esqueveil testified that the only explanation Washington gave her for M.D.'s fractured skull was that X.H. might have struck the baby on the head with his toy truck.

There was evidence that, when interviewed by an investigator with the Arkansas State Police, Washington offered innocent explanations for all the bruises and injuries sustained by M.D. and stated that her skull was possibly fractured by X.H.'s hitting her with a toy truck he had been throwing into the air. Washington admitted cutting M.D.'s lip and possibly bruising her back and hands in connection with his efforts to resuscitate her.

The jury heard evidence that Washington subsequently told detectives with the Little Rock Police Department that M.D. had vomited after being fed, her eyes had rolled back into

her head, and, when her body suddenly stiffened in his arms, she slipped out of his hands and hit her head on the floor. Washington explained that he had been sitting on the bed cleaning vomit off the baby when he dropped her from a height of about four feet. Washington stated that he had accidentally backhanded M.D. when he rolled over in bed but later conceded that he might have been frustrated with her crying while he was trying to sleep. Washington also told detectives that the bruises on M.D.'s leg were likely the result of his playfully "tugging" and "tapping" on her thigh "maybe twenty-five times."

In her testimony, Dowd offered innocent explanations for various bruises on M.D.'s body that she claimed were present before February 17, 2012. Dowd insisted that she would not still be with Washington if she believed that he had purposely hurt her baby.

Washington testified that he had been with M.D. since she was born.[1] Washington stated that, around noon on February 18, 2012, M.D. vomited after she was fed. He testified that, while cleaning up the vomit, M.D.'s head was cupped in his hand and her body was resting on his left leg. According to Washington, as he was turning to the side of the bed, M.D. suddenly jerked causing her to slip out of his arms. Washington testified that M.D. fell from the edge of the mattress to the floor and that he did not realize that M.D.'s skull had been fractured by the fall. He claimed that he did not initially admit to dropping M.D. because he did not want Dowd's family to think that he could not care for a newborn. Washington testified that he did not intentionally backhand, drop, or otherwise hit M.D.

Dr. John Gilbert Galaznik, a pediatrician, testified for the defense that dropping an

---

[1]M.D. is not Washington's biological child.

SLIP OPINION

infant on her head from a height of two to three feet could result in a fractured skull and that a fall from a height of three to four feet would be "more than adequate" to cause skull fracturing, subdural bleeding, retinal hemorrhages, and seizures. In its case in chief, the State had offered evidence to the contrary. In her direct examination, Dr. Esqueveil testified that it was "very unlikely" that M.D.'s head injury could have been caused by a single fall from a sitting position. She described M.D.'s injuries as "abusive head trauma." Also, Dr. Leann Linam, a pediatric radiologist at ACH, testified that a fracture as widely separated as M.D.'s had to have resulted from a significant, high-impact force, such as from a motor-vehicle accident or a fall from a second-story window.

Washington was charged with and found guilty of first-degree battery under Ark. Code Ann. § 5-13-201(a)(9) (Supp. 2011), which provides that a person commits first-degree battery when he knowingly causes serious physical injury to any person four years of age or younger under circumstances manifesting extreme indifference to the value of human life. A person acts "knowingly" with respect to a result of the person's conduct when he is aware that it is practically certain that his conduct will cause the result. Ark. Code Ann. § 5-2-202(2) (Repl. 2006). First-degree battery under section 5-13-201(a)(9) is a Class Y felony, Ark. Code Ann. § 5-13-201(c)(2), punishable by imprisonment of not less than ten and not more than forty years, or life. Ark. Code Ann. § 5-4-401(a)(1) (Repl. 2006).

The trial court refused Washington's request for an instruction on third-degree battery under Ark. Code Ann. § 5-13-203(a)(2) (Repl. 2006), which provides that a person commits third-degree battery when he recklessly causes physical injury to another person. A person acts

4

"recklessly" with respect to attendant circumstances or a result of his conduct when the person consciously disregards a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur. Ark. Code Ann. § 5-2-202(3)(A). The risk must be of a nature and degree that disregard of the risk constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation. Ark. Code Ann. § 5-2-202(3)(B).

A defendant may be convicted of one offense included in another offense with which he is charged. Ark. Code Ann. § 5-1-110(b) (Supp. 2011). An offense is included in an offense charged if the offense: (1) is established by proof of the same or less than all of the elements required to establish the commission of the offense charged, . . . or (3) differs from the offense charged only in the respect that a less serious injury or risk of injury or a lesser kind of culpable mental state suffices to establish the offense's commission. Ark. Code Ann. § 5-1-110(b)(1), (3).

Our supreme court zealously protects the right of an accused to have the jury instructed on a lesser-included offense, and it is reversible error to refuse to give an instruction on a lesser-included offense when the instruction is supported by even the slightest evidence. *Webb v. State*, 2012 Ark. 64. If, after viewing the facts in the light most favorable to appellant, no rational basis for a verdict acquitting him of the greater offense and convicting him of the lesser one can be found, it is not error for the trial court to refuse to give an instruction on the lesser-included offense. *Davis v. State*, 97 Ark. App. 6, 242 S.W.3d 630 (2006). A trial court's ruling on whether to submit jury instructions will not be reversed absent an abuse of

discretion. *Id.*

Washington argues that the jury could have concluded that he recklessly caused M.D.'s injuries.[2] We agree that there was evidence presented by the defense that would support an instruction on third-degree battery.

While M.D.'s physical injury was undoubtedly a serious one, Washington testified that he did not mean to drop M.D. on her head and that it was an accident. Moreover, an expert offered his opinion that a baby's skull could be fractured by a fall such as the one described by Washington. Viewing this evidence in the light most favorable to Washington, there was "even the slightest evidence" from which a jury could have found that Washington acted with less than a knowing mental state. We hold that, under these circumstances, the trial court abused its discretion in failing to instruct the jury on third-degree battery.

Reversed and remanded.

PITTMAN and HIXSON, JJ., agree.

*Lisa Thompson*, Deputy Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

---

[2]Washington also argues that there are conflicting precedents and that Ark. Code Ann. § 5-1-110(b)(3) has been misinterpreted. We do not address these arguments other than to point out that Washington did not raise them before the trial court. This court will not consider arguments raised for the first time on appeal, and a party is bound on appeal by the nature and scope of the arguments presented at trial. *Reed v. State*, 2011 Ark. App. 352, 383 S.W.3d 881.