

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00855-CR

Abraham **LINARES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2011 CRM 00635 D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Catherine Stone, Chief Justice
    Sandee Bryan Marion, Justice
    Patricia O. Alvarez, Justice

Delivered and Filed:  March 5, 2014

AFFIRMED

Appellant Abraham Linares, along with co-defendants Carlos Zambrano and Romeo Hinojosa, was charged with second-degree aggravated assault with a deadly weapon and first-degree aggravated kidnapping of Nestor Abundez.  Linares was convicted of both counts.  Linares was charged as a primary actor and as a party to the offense.  The jury assessed punishment at two years confinement in the Institutional Division of the Texas Department of Criminal Justice, but suspended and probated the sentence for a period of ten years, and a fine in the amount of

$5,000.00 on the aggravated assault with a deadly weapon charge and twenty-five years confinement and assessed a $10,000.00 fine on the aggravated kidnapping charge.

On appeal, Linares argues (1) the evidence is legally insufficient to prove that Linares committed the offense of aggravated kidnapping because there was no evidence that Nestor Abundez was secreted and (2) the State's comments during closing argument were improper and outside the scope of permissible jury argument and violated his right to a fair trial. Linares does not appeal the aggravated assault with a deadly weapon conviction. Because there was sufficient evidence to support a finding that Linares acted as a principal or as a party to the offense of aggravated kidnapping, and the State's jury argument did not exceed the areas of acceptable argument, we affirm the judgment of the trial court.

## FACTUAL BACKGROUND[1]

### A.     The Arrest

At approximately 2:00 am, on May 2, 2011, Webb County Deputy Gerard Pecina was patrolling Highway 359 when he witnessed a green Expedition SUV traveling in excess of the marked speed limit. Deputy Pecina proceeded to follow the SUV into a subdivision, and ultimately initiated a stop. The SUV eventually came to a stop at a Valero gas station. Deputy Pecina testified that Hinojosa, the driver of the SUV, immediately exited the vehicle and began to approach Deputy Pecina's vehicle. When Deputy Pecina demanded identification, a very nervous Hinojosa provided a Texas identification card. Based on Hinojosa's edginess, Deputy Pecina ordered Hinojosa to wait by the front of the vehicle while Deputy Pecina attempted to identify the three other individuals in the SUV—Zambrano, Linares, and Abundez.

---

[1] All three defendants were tried together before one jury. Accordingly, the facts in this opinion, as well as the facts set forth in the opinions of Carlos Zambrano and Romeo Hinojosa, are identical.

Sergeant Sanchez testified that when he arrived to assist Deputy Pecina, Hinojosa was already in the back of Deputy Pecina's vehicle. Pat-downs were conducted on the other men. Before starting the pat-down on Abundez, however, Abundez informed Deputy Pecina that he did not know the other individuals and that they had kidnapped him with a gun.[2] Deputy Pecina testified that Abundez appeared scared, frightened, and nervous. Sergeant Sanchez separated Abundez from the others and placed him in the back of his patrol car. Abundez then related to Sergeant Sanchez what happened, including being taken from his residence at gunpoint, that the firearm was thrown from the SUV by one of the men, and where it was thrown. Deputy Pecina headed to the location where the gun was allegedly thrown and found a weapon, a loaded handgun magazine, and a gray-colored cell phone.

Zambrano, Hinojosa, and Linares were placed under arrest for the aggravated kidnapping of Abundez. Zambrano, Linares, and Hinojosa were each charged with second-degree aggravated assault with a deadly weapon and first-degree aggravated kidnapping. All three individuals were tried together and the jury trial began on Monday, October 15, 2012.

**B.      The Trial**

*1.      Nestor Abundez's Testimony*

The State's first witness was Abundez. Abundez testified that about 1:00 a.m. on May 2, 2011, he and his family, along with his brother's family, were at his house in Laredo, Webb County, Texas. Abundez testified that he went outside to investigate loud noises and saw a white Ford truck and two individuals honking the horn. When Abundez's wife walked outside their home with Abundez's cell phone, Abundez took the phone and instructed her to return to the house. Although he had never seen the two men before, Abundez walked towards the truck. According

---

[2] We note that neither Abundez, nor any of the defendants, spoke English. The officers' testimony included their translation of witnesses' statements. At trial, victim and witness statements were offered via a translator.

to Abundez, once he approached the truck, Zambrano struck him in the head with the handle of the pistol and then forced him into the vehicle. Shortly thereafter, the white truck met up with a green Ford Expedition, driven by Hinojosa, and Abundez was transferred to the SUV. Abundez testified that while Hinojosa drove, Zambrano held a gun to him.

Abundez further testified that Zambrano, Linares, and Hinojosa were apparently looking for another individual named Pelon, a nickname for someone who is bald. Abundez, who was also bald, explained that he and his family had only lived in the house for a short period of time and to his knowledge, a person called Pelon lived in the house prior to Abundez.

During cross-examination, defense counsel suggested Abundez knew the two assailants and that all three men went to Linares's house to party and smoke marijuana when a fight broke out. After questioning by defense counsel, Abundez acknowledged he had his cell phone prior to Zambrano and Linares taking it, but explained that he was too nervous to call anyone or use the phone. Defense counsel also argued the weapon actually belonged to Abundez and that it was thrown from the Expedition by Abundez. Abundez, however, denied owning or throwing the firearm located by Deputy Pecina.

### 2.    *Christian Abundez's Testimony*

Abundez's brother, Christian Abundez, testified that after seeing his brother forced into the truck, he grabbed his keys and started chasing the white truck. At some point, the truck stopped at a creek and both Linares and Zambrano exited the vehicle. According to Christian, Linares hit him (Christian) in the back and Zambrano threatened him with a gun. Christian also testified a third person was driving the truck. At Abundez's request, Christian left to find their older brother, Jose.

Once Christian found Jose, they went back to the creek but no one was there. After driving around the area trying to find Abundez, they saw the commotion at the gas station. When

questioned by defense counsel, Christian acknowledged seeing the same white truck, which had been in front of Abundez's residence and the one he had chased earlier, at the gas station, but did not notify the officers.

        *3.       Sergeant Rolando Elizalde's Testimony*

Although none of the defendants testified at trial, Sergeant Rolando Elizalde Jr. testified about the defendants' interviews taken shortly after their arrest.

With regard to Hinojosa's interview, Sergeant Elizalde testified Hinojosa told him that he was awakened by Linares, his son-in-law, at approximately 1:00 a.m. Hinojosa explained he was simply driving Linares and Zambrano around because he did not want Linares to get a ticket for the dark tint on his vehicle. Hinojosa also relayed that he did not know Abundez's name or anything about him and that the other men called him "mojadito" or wetback. During cross-examination, Sergeant Elizalde acknowledged that Hinojosa seemed surprised the three were being held on kidnapping charges and asked the officer whether it was the "mojadito" that was making the allegation. Hinojosa also described the others as drunk.

While interviewing Hinojosa, Sergeant Elizalde observed that Hinojosa was very calm, but extremely concerned that his wife have access to the impounded truck so that she could be at work the following day. According to Sergeant Elizalde, it appeared to him that Hinojosa was more concerned about his truck being impounded than with the kidnapping charges.

When asked about Linares's interview, Sergeant Elizalde testified that Linares relayed that he and the others had been partying in the San Enriquez Subdivision before they picked up Abundez. As to his presence at the gas station, Linares explained they were meeting another person and that Abundez had only been with them for a short period of time when they were stopped by the deputy. Sergeant Elizalde testified that although Linares acknowledged knowing about the weapon, he never admitted ownership of the weapon.

Sergeant Elizalde further testified that immediately after beginning the interview, Linares told the officer that he was a confidential informant for other officers and that he wanted to talk in exchange for a "deal." Sergeant Elizalde described Linares as fidgety, always moving his legs, and at times crying. During testimony, Sergeant Elizalde described Linares as "look[ing] like a drug addict, fidgety and nervous."

Based on Linares's statement, Sergeant Elizalde testified that he requested a patrol officer travel to the San Enriquez Subdivision, but once there, that the officer did not find any evidence that a party took place. Sergeant Elizalde further explained that he even went back to the area the following day, but he likewise did not see any evidence suggesting a party.

On cross-examination, Sergeant Elizalde acknowledged Abundez was never searched because Abundez reported the kidnapping before the officers conducted the pat-down. Defense counsel also extensively questioned Sergeant Elizalde as to why the weapon was not fingerprinted arguing that it was the officers' failure to fingerprint the firearm that negated their ability to rule out Abundez as the owner of the firearm.

Regarding Zambrano's interview, Sergeant Elizalde testified Zambrano told him that he and Linares were at Hinojosa's and Linares's house that evening. They began partying around 10:00 p.m. and then went cruising to Los Presidentes and Southgate. They all ended up at "the ranch" and that was where they picked up Abundez.

During cross-examination of Sergeant Elizalde, defense counsel suggested that Zambrano was very drunk when he was arrested and that he had denied using the firearm. Once again, defense counsel attacked the officers' failure to fingerprint the firearm and Sergeant Elizalde indicated that Deputy Pecina made the decision whether to request fingerprint analysis. Additionally, in response to questioning by defense counsel, Sergeant Elizalde acknowledged that

several rounds of ammunition were located in the impounded SUV, however they were a different caliber than the firearm collected by Deputy Pecina.

As a conclusion, Sergeant Elizalde opined that Zambrano, Linares, and Hinojosa's statements were conflicting.

*4.      Deputy Gerard Pecina's Testimony*

Deputy Pecina's testimony included his initial stop of the vehicle and his actions in locating the firearm. Similar to the cross-examination of Sergeant Elizalde, defense counsel probed Deputy Pecina's rationale for failing to submit the firearm for fingerprint analysis. Deputy Pecina explained that he did not submit the firearm for testing because the location where it was found corroborated what Abundez, the victim, had reported. He continued that he was working an abduction case, the victim identified the individuals, and he did not have any reason to believe analysis on the weapon would assist in the prosecution. Deputy Pecina acknowledged that no one requested the gray cell phone be fingerprinted or that additional tests be performed.

## C.      The Jury Verdict

Linares was found guilty of aggravated assault with a deadly weapon and aggravated kidnapping. With regard to the aggravated assault charge, the jury assessed punishment at two years confinement in the Institutional Division of the Texas Department of Criminal Justice, but suspended and probated the sentence for a period of ten years, and a fine in the amount of $5,000.00. With regard to the aggravated kidnapping charge, the jury assessed punishment at twenty-five years confinement and assessed a $10,000.00 fine. This appeal ensued.

On appeal, Linares argues the evidence is legally insufficient to prove that Linares committed the offense of aggravated kidnapping and the State's comments during closing argument were improper. Linares does not appeal the aggravated assault with a deadly weapon conviction. We address the sufficiency argument first.

## SUFFICIENCY OF THE EVIDENCE

Linares alleges three bases upon which the evidence is insufficient to support his conviction: (1) there is no evidence regarding Linares's mens rea to secrete Abundez or place him in a place where he could not be found; (2) Abundez's cross-examination testimony directly contradicted any evidence the State introduced regarding Linares's mens rea; and (3) Deputy Pecina supported Abundez's testimony that Linares never developed the mens rea to kidnap Abundez. Linares does not challenge the legal sufficiency of the conviction as a whole, but only the legal sufficiency of his mens rea to abduct Abundez. The State counters that Linares could have been found criminally liable by (1) personally committing the offense, (2) intentionally causing or aiding another to commit the offense, or (3) intentionally failing to take reasonable steps to prevent the commission of the offense, when he had such a duty. We agree with the State.

### A. Standard of Review

In reviewing the legal sufficiency of the evidence, an appellate court determines whether, viewing "all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Hardy v. State*, 281 S.W.3d 414, 421 (Tex. Crim. App. 2009); *accord Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We must defer to the jury's assessment of the credibility of the witnesses "and the weight to be given to their testimony," *Brooks*, 323 S.W.3d at 899, and allow for reasonable inferences from the evidence presented. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) (stating that "the jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony" except where provided otherwise by law); *Jackson*, 442 U.S. at 319 (reiterating it is strictly the province of the jury "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to

ultimate facts"). In so doing, an appellate court presumes that the jury "resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The key question is whether "the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." *See Williams*, 235 S.W.3d at 750. Only upon a finding the evidence is legally insufficient will this court reverse the trial court's judgment and order an acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41 (1982). This legal sufficiency standard applies equally to both direct and circumstantial evidence. *Clayton*, 235 S.W.3d at 778; *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

**B.     Aggravated Kidnapping**

In the present case, Linares was charged both as a primary actor and as a party to the offense of aggravated kidnapping. Whether a person is charged as a primary actor or as a party to the offense, the underlying offense remains the same.

A person commits the offense of aggravated kidnapping "if he intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense." *See* TEX. PENAL CODE ANN. § 20.04(b) (West 2011). For purposes of this statute, "'[a]bduct means to restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force." *See id.* § 20.01(2). "'Restrain' means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *Id.* § 20.01(1). Restraint is "without consent" if "accomplished by force, intimidation, or deception." *Id.* § 20.01(1)(A); *see also Holmes v. State*, 873 S.W.2d 123, 126 (Tex. App.—Fort Worth 1994, no pet.) (explaining that "[c]onfining is not defined in the Penal Code or by case law; thus, we use its common meaning when reviewing the

evidence," which may include shutting up, imprisoning, enclosing, detaining, relegating to certain limits, or trapping victim).

To convict Linares under the law of parties, the jury had to determine that Linares was criminally responsible for the acts of another. TEX. PENAL CODE ANN. § 7.01(a) (West 2011). "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id.* Section 7.02(a)(2) of the penal code provides that a "person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2). Generally, the trial court may instruct the jury on the law of parties if "there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties." *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999). In doing so, the court may consider the events that took place before, during, and after the commission the crime. *See Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004); *Goff v. State*, 931 S.W.2d 537, 545 (Tex. Crim. App. 1996). Allegations that a party is guilty under the law of parties need not be specifically pled in the indictment. *Barrera v. State*, 321 S.W.3d 137, 144 n.1 (Tex. App.—San Antonio 2010, pet. ref'd).

## C.     Charge of the Court

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Because Linares does not contend error in the trial court's charge, we look directly at the language contained within the trial court's jury charge.

### 1.     *Instructions Contained within the Court's Charge*

The trial court provided the following definition in the charge:

- 10 -

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.

Each party to an offense may be charged with the commission of the offense.

A person is criminally responsible for an offense committed by the conduct of another, if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

A defendant's mere presence alone will not make him responsible for an offense. A defendant's mere knowledge of a crime or failure to disclose a crime also is not sufficient.

*2.      Application Paragraph of Court's Charge*

To convict Linares of aggravated kidnapping, the trial court's charge required the jury to find the following:

### V.

You must determine whether the State has proved the defendant(s) committed the crime by his own conduct. To prove this, the State must prove, beyond a reasonable doubt, three elements. The elements are that-

1. On or about the 2nd day of May 2011, in Webb County, Texas, Abraham Linares, Romeo Hinojosa, and/or Carlos Zambrano, caused the abduction of an individual, Nestor Abundez, by restricting his movement with the intent to prevent his liberation by secreting him or holding him in a place where he was not likely to be found;
2. During the commission of the abduction Abraham Linares, Romeo Hinojosa, and/or Carlos Zambrano, used or exhibited a deadly weapon; and
3. Abraham Linares, Romeo Hinojosa, and/or Carlos Zambrano, did this intentionally or knowingly.

### VI.
### Application, Liability as a Party

Now bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that

1. On or about the 2nd day of May 2011, in Webb County, Texas, Abraham Linares, Romeo Hinojosa, and/or Carlos Zambrano, acting

alone or as a party (a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both) caused the abduction of an individual, Nestor Abundez, by restricting his movement with the intent to prevent his liberation by secreting him or holding him in a place where he was not likely to be found;

2. During the commission of the assault, Abraham Linares, Romeo Hinojosa, and/or Carlos Zambrano used or exhibited a deadly weapon;

3. Abraham Linares, Romeo Hinojosa, and/or Carlos Zambrano did this intentionally or knowingly; and

4. Abraham Linares, Romeo Hinojosa, and/or Carlos Zambrano acted, solicited, encouraged, directed, aided, or attempted to aid with the intent to promote or assist the commission of the offense of Aggravated Kidnapping, First Degree Felony, by Abraham Linares, Romeo Hinojosa, and/or Carlos Zambrano then you must say by your verdict "guilty."

If you find that the State did not prove each of the first three elements under the heading "Application as Primary" and you find that the State did not prove each of these four elements under this heading beyond a reasonable doubt you must say by your verdict "not guilty."

You need not be unanimous about the theory underlying either your "guilty" or "not guilty" verdict. If you all agree the defendant is guilty either as a primary actor or as a party, then you must find the defendant "guilty." If you all agree the defendant is not guilty as both a primary actor or as a party, then you must find the defendant "not guilty."

Additionally, the jury was also instructed that simply being at the scene was not sufficient.

**D.    Analysis**

Because Linares only challenges the legal sufficiency of the evidence that he abducted Abundez, we limit our discussion to the element of "abduct." The State contends the jury could have found sufficient evidence that (1) Linares restrained Abundez with intent to secrete or hold him, (2) Linares intentionally caused or aided Zambrano or Hinojosa to do so, or (3) that Linares failed to take reasonable steps to prevent either Zambrano or Hinojosa from doing so.

*1.    Evidence that Linares Restrained Abundez*

Linares contends there was no evidence that Abundez was abducted—either secreted or restrained. As evidence of such, Linares points to Deputy Pecina's testimony that he did not see

Abundez restricted in any way. Linares also points to Abundez's response that he was not "put in a place where he [was] not likely to be found." The State, on the other hand, contends this testimony is taken out of context. The State points out that when asked whether he was free to leave, Abundez responded "No" and that he "didn't think [he] could really escape."

Assuming these statements were actually conflicting, resolution of such was solely for the jury to determine and not this court. *Brooks*, 323 S.W.3d at 899. "It is up to the jury to distinguish between those situations in which a substantial interference with the victim's liberty has taken place and those situations in which a slight interference has taken place." *Hines v. State*, 75 S.W.3d 444, 448 (Tex. Crim. App. 2002). "This can be established by looking at all of the circumstances surrounding the offense." *Id.*

The jury was presented with evidence that Zambrano held Abundez at gunpoint and used a gun to waive off his brother's attempt to rescue him. *See Santellan v. State*, 939 S.W.2d 155, 163 (Tex. Crim. App. 1997) (holding loading victim into car and driving away with her satisfied restraint); *Ramirez v. State,* 692 S.W.2d 729, 732 (Tex. App.—Waco, 1985, no pet.) (concluding that threatening deadly force to abduct a person can be communicated separate and apart from exhibiting a deadly weapon). The evidence also supports that Linares (1) accompanied Zambrano at each phase and (2) struck Christian Abundez while Zambrano threatened him with a gun to dissuade him from thwarting their activities.

The jury could reasonably deduce these actions supported the conclusion that Linares, Hinojosa, and Zambrano were not only intentionally keeping Christian Abundez from his brother, but they were also restraining Abundez from leaving the truck. In addition to "chasing" Abundez's brother away, the jury could also reasonably rely on the truck's "racing away" from Abundez's house as evidence that Linares and Zambrano were intentionally trying to secrete or hide Abundez. *See Earhardt v. State*, 832 S.W.2d 607, 608 (Tex. Crim. App. 1991) (holding that the only

requirement for restraint is that the interference with liberty be substantial): *Jenkins v. State*, 248 S.W.3d 291, 295 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (finding that bearing and firing a firearm in an apartment while refusing to allow victim to leave constituted restraint by threatening deadly force); *see also Hines*, 75 S.W.3d at 448 (holding forcing entry into bank, threatening employee with weapon, and ordering her to open vault supported finding of abduction and restraint).

> 2. *Evidence that Linares Intentionally Caused or Aided the Others in Restraining Abundez*

For the State to rely on circumstantial evidence to prove Linares intentionally caused or aided either Zambrano or Hinojosa to restrain Abundez, evidence that Linares was present at the time is required. *Tarpley v. State*, 565 S.W.2d 525, 529 (Tex. Crim. App. [Panel Op.] 1978); *see also Rivera v. State*, 12 S.W.3d 572, 575 (Tex. App.—San Antonio, 2000, no pet.). But mere presence alone is not sufficient; the State must also show an act done by Linares that evidences his intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985). A jury may look at events occurring before, during, and after the offense and the defendant's behavior to show understanding and common design. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994). The jury looks at the cumulative effect of all the incriminating facts, as opposed to each individual fact. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

Here, the jury could reasonably deduce that Linares was present at every stage of the kidnapping and intentionally assisted either Zambrano or Hinojosa along the way. Based on Abundez's testimony, Linares was present from the moment Abundez was taken from his home. Additionally, the testimony substantiated that (1) Linares was in the vehicle when Zambrano held the gun to Abundez's head, (2) Linares helped move Abundez from the white truck to the green Expedition, (3) Linares either hit Christian Abundez in the back or threatened him with a gun, and

(4) instead of denying his involvement in the crime, Linares immediately offered to provide information to the officers. Based on the testimony of the Abundez brothers, and the circumstantial evidence surrounding the offense, the jury could reasonably infer that Linares agreed to kidnap Abundez and unintentionally assisted them in doing so. *See Tarpley*, 565 S.W.2d at 529.

## E.    Conclusion

After viewing "all the evidence in the light most favorable to the verdict," based on the evidence presented at trial, including circumstantial evidence, a rational jury could have found Linares guilty of aggravated kidnapping beyond a reasonable doubt. *See Hardy*, 281 S.W.3d at 421; *Brooks*, 323 S.W.3d at 899. Accordingly, this issue is overruled. [3]

### IMPROPER JURY ARGUMENT

Linares next asserts the State's comments during closing argument were improper, outside the scope of permissible jury argument, and violated his right to a fair trial.

## A.    Proper Jury Argument

"The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial in order to arrive at a just and reasonable conclusion based solely on the evidence." *Harris v. State*, 122 S.W.3d 871, 883 (Tex. App.—Fort Worth 2003, pet. ref'd). "[P]roper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *see also Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (same); *Coble v. State*, 871 S.W.2d 192, 204 (Tex. Crim. App. 1993) (same). A prosecuting attorney is permitted

---

[3] Although Linares and the State both briefed the issue of whether the jury could find that Linares intentionally failed to exercise reasonable efforts to stop the kidnapping, the jury was not charged under such theory and, therefore, could not have found Linares guilty under such theory. *See Vasquez v. State*, 389 S.W.3d 361, 370–71 (Tex. Crim. App. 2012). Accordingly, we do not address this issue on appeal. *See* TEX. R. APP. P. 47.1.

to draw from the facts in evidence all inferences which are reasonable, fair, and legitimate, but he may not use the jury argument to get before the jury, either directly or indirectly, evidence which is outside the record. *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990) (citing *Jordan v. State*, 646 S.W.2d 946, 948 (Tex. Crim. App. 1983)).

The Court of Criminal Appeals also consistently rejects arguments that "strike at a defendant over the shoulder of his defense counsel." *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995). Comments which attempt to cast aspersions on the character of defense counsel and necessarily strike over counsel's shoulders at the defendant are not within the zone of proper jury argument. *Nevels v. State*, 954 S.W.2d 154, 158 (Tex. App.—Waco 1997, pet. ref'd). Although articulating precise rules is difficult, the court has cautioned that "a prosecutor runs a risk of improperly striking at a defendant over the shoulder of counsel when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character." *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Even when couched in terms of a rebuttal, proper defense counsel's arguments "cannot serve as a basis for permitting prosecutorial comments that "'cast aspersion on defense counsel's veracity with the jury.'" *Cole v. State*, 194 S.W.3d 538, 544 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (quoting *Mosley*, 983 S.W.2d at 259); *accord Dinkins*, 894 S.W.2d at 357.

When jury argument falls outside the approved areas, "it will not constitute reversible error unless [it] is extreme or manifestly improper . . . or injects new facts harmful to the accused into the trial proceeding." *Temple v. State*, 342 S.W.3d 572, 602–03 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013); *see Brown*, 270 S.W.3d at 570; *see also* TEX. R. APP. P. 44.2(b).

**B.     Objections to the State's Jury Argument**

Linares points to the comments made by the State regarding the attorneys trying to convince Abundez not to testify. Specifically, Linares contends (1) "the State struck at [Linares] over the shoulders of his counsel" by suggesting counsel acted in bad faith by attempting to persuade Abundez not to testify; (2) "the prosecutor injected a new and harmful fact in closing argument" never testified to by Abundez; and (3) even assuming defense counsel's question during cross-examination was improper, the trial court's instruction was sufficient and, therefore, the State's argument was not invited.

At issue is the following jury argument:

*Abundez Cross-Examination*
Defense:  And so when you and I met and spoke 2 or 3 days ago, when you told me that you were afraid that they would charge you with the offense, you were lying to me?

The State objected and the following was argued *out of the presence of the jury*.

State:     This statement that we're going to charge him with an offense, this is ridiculous Your Honor.
Defense:  That's what he told me.
State:     It is utterly ridiculous, Your Honor. It's the most disgusting behavior I've ever seen in a Defense counsel ever.
. . . .
And, Your Honor, I want everything stricken about the statement, threatening to arrest or charge this victim, the victim, mind you, with anything.
. . . .
Court:     Again, I'll remind the jury to disregard any statements made in conjunction with the previous one that I asked you to disregard the District Attorney's Office and the allegations of his conduct. Let's proceed.

Upon further cross-examination, Abundez denied that he was afraid of being charged with any offense by the State. "The only thing I said was that I did not want to come."

*State's Jury Argument*
State:     Then you heard the victim, all three of them went to his house on Friday before trial to try and convince him not to testify.

Defense:  Objection, Your Honor.  That leaves a false impression with the Jurors with the lawyers, not the clients.
State:  I'm sorry.  The three attorneys.  The three attorneys went to this person's house to try to get him not to testify the Friday before trial.
Defense:  Objection, Your Honor.
Court:  Sustained.
Defense:  It mischaracterizes the evidence.  Nobody tried to get him not to testify.
Court:  All right.  Move on.
. . . .
State:  What [defense attorneys] say is not evidence as much as they'd like for it to be.
Defense:  Objection, Your Honor.  It switches the burden.
Court:  Sustained.  Move on.

Linares relies on *Wilson v. State*, 938 S.W.2d 57 (Tex. Crim. App. 1996), *abrograted on other grounds*, *Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002), for support of his contentions.  The argument in *Wilson* focused on the following portion of the State's argument:

> I have taken a very sacred oath, in my opinion, to see that justice is done in every case I prosecute.  It is your duty—and in the last paragraph of this charge you can see—to see that justice is done in this case.
>
> [Defense Counsel] has no such oath, and what he wishes is that you turn a guilty man free.  That's what he wishes, and he can wish that because he doesn't have the obligation to see that justice is done in this case.

*Id.* at 58.  The court concluded that because the case did not include any evidence of the prosecutor's oath, the State's argument injected new facts into the case and therefore the argument was harmful to the defendant.  *Id.* at 60.

Here, the State's argument is not akin to *Wilson*.  During cross-examination of the State's key witness, defense counsel suggested (1) that Abundez had been coerced and threatened by the State regarding his testimony and (2) that Abundez was lying about the events that evening.  The State objected at the time and received an instruction from the trial court.

Given that defense counsel raised the issue before the jury, unlike the State's argument in *Wilson*, it was the defense that placed at issue their speaking to Abundez "2 or 3 days" before the start of the trial.  *Id.* at 60.  When the State attempted to respond to the defense questions during

her closing argument, the trial court ultimately sustained the defense objection and instructed the State to "move on." We, therefore, conclude the State's argument responding to defense counsel's argument that the State was threatening Abundez to testify and that Abundez was lying regarding the alleged events was not improper. *See Alami v. State*, 333 S.W.3d 881, 892–93 (Tex. App.—Fort Worth 2011, no pet.); *Caron v. State*, 162 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Because we conclude the prosecutor's argument was not improper, we need not address whether the argument effected his substantial rights. TEX. R. APP. P. 47.1.

CONCLUSION

The testimony at trial supports that Linares was present at every stage of the kidnapping and assisted either Zambrano or Hinojosa along the way. Based on the testimony of the Abundez brothers, and the circumstantial evidence surrounding the offense, the jury could reasonably infer there was an agreement between the parties to kidnap Abundez. *See Tarpley*, 565 S.W.2d at 529. After viewing "all the evidence in the light most favorable to the verdict," based on the evidence presented at trial, a rational jury could have found Linares guilty beyond a reasonable doubt. *See Hardy*, 281 S.W.2d at 421; *Brooks*, 323 S.W.3d at 899.

Additionally, because the prosecutor's closing comments responded to arguments made by defense counsel that the State was threatening Abundez to testify and that Abundez was lying regarding the alleged events, the State's argument was not improper.

For these reasons, Linares's issues on appeal are denied and we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

PUBLISH