

# ARKANSAS COURT OF APPEALS

DIVISION II

No. CR–13–564

| | |
|---|---|
| | **Opinion Delivered** April 23, 2014 |
| EUGENE MCCARTY | APPEAL FROM THE WASHINGTON |
| APPELLANT | COUNTY CIRCUIT COURT |
| | [NO. CR–2012-1264-1] |
| V. | |
| | HONORABLE WILLIAM A. STOREY, |
| | JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

## BRANDON J. HARRISON, Judge

Eugene McCarty was found guilty of rape, kidnapping, and second-degree sexual assault. He now appeals, arguing that the circuit court erred in overruling his objections during the State's closing argument. We find no error and affirm.

Because McCarty has not challenged the sufficiency of the evidence supporting his convictions, only a brief recitation of the facts is necessary. In a felony information filed 9 August 2012, McCarty was charged with the rape, kidnapping, and second-degree sexual assault of a minor under the age of fourteen. At a jury trial held in December 2012, the State presented evidence that, on July 3 of that year, McCarty had taken nine-year-old A.A. to his home, kept her there overnight, and raped her. A.A. was the daughter of Pauline Atkins, who had lived with McCarty off and on for several years. Catherine Collins, a family friend, testified that she visited McCarty's home on July 3 and saw him come out of his back

bedroom naked. She testified that A.A. exited the same room about five minutes later, that she (Catherine) thought the situation seemed "weird," and that she later called Pauline to tell her about it. The next day, July 4, Pauline went to McCarty's home to get her daughter and discovered the rape. A jury found McCarty guilty on all charges, and the court sentenced him to an aggregate term of thirty-five years' imprisonment. This appeal followed.

McCarty argues that the State repeatedly referred to matters outside the evidence during closing arguments and that the court erred in overruling his objections on that basis. Our supreme court has explained that "some leeway is given to counsel in closing argument and that counsel are free to argue every plausible inference which can be drawn from the testimony." *Newman v. State*, 353 Ark. 258, 290, 106 S.W.3d 438, 459 (2003). Therefore, a circuit court is given broad discretion in controlling the arguments of counsel, and, absent an abuse of that discretion, the court's decision will stand. *See Jackson v. State*, 368 Ark. 610, 249 S.W.3d 127 (2007).

McCarty's first argument concerns a question posed by the State during closing argument: "Why would the Defendant lie about Catherine coming over there? Because she caught him, she caught them both naked." During Pauline's testimony, she stated that "[Catherine] told me that Gene and [A.A.] came out of the bedroom and they were putting their clothes on." Catherine, on the other hand, denied telling Pauline that she saw both McCarty and A.A. naked and testified that A.A. was wearing shorts and a top when she exited the bedroom.

SLIP OPINION

McCarty argues that the prosecutor's statement was an "intentional misrepresentation of fact" and a "reinforcement of Pauline's lie" that "denied Appellant a fair trial." But McCarty's only argument below was that the prosecutor was "reciting things that are not in the record, not in evidence." He never asserted that the prosecutor intentionally misrepresented the facts or that he was denied a fair trial. A party is bound on appeal by the nature and scope of the arguments presented at trial. *Reed v. State*, 2011 Ark. App. 352, 383 S.W.3d 881. We affirm on this point.

McCarty also takes issue with the court's response to the objection just discussed, which was "this is argument and the jury will determine what facts this case turns on and there is a record that supports this particular argument." McCarty contends that "[t]he court likely erred both in ruling that the jury determines that and that there's a record that supports this particular argument. That's quite obviously a comment on the evidence." McCarty, however, did not object to the court's ruling, so we will not consider his new argument now. *Reed*, *supra*.

Next, McCarty challenges the prosecutor's statements that McCarty claimed the rape occurred because his blood sugar was low, that he must have been unconscious, and that he possibly had "some kind of insulin attack." McCarty objected below that "[m]uch of this is not in the evidence," and he again argues on appeal that this is "nowhere in the evidence or the record" and that "[n]o one for Appellant ever contended that he was unconscious or that he was suffering a sugar attack."

SLIP OPINION

The record reveals that McCarty's trial counsel pursued a line of questioning on this basis when cross-examining Detective Kenneth Albright, who interviewed McCarty after his arrest. Counsel, using a transcript of that interview and quoting it extensively, had the following exchange with Albright:

> COUNSEL: Now, you told him, "I want to believe it's that Gene made a mistake and not Gene's a bad guy.["] So that was the second time you used the word mistake, again, and you haven't asked a single question yet. Are you suggesting to him that he made a mistake at that point?
>
> ALBRIGHT: That was — as part of the interview interrogation you start offering up, it was a mistake, you know, a one-time deal, it was the booze, it was this, it was that, that's part of the basis of the interrogation was to basically offer them up a crutch why they did what they did.
>
> . . . .
>
> COUNSEL: Okay. Now, you intentionally misled him into believing that he had done something while he was unconscious, didn't you?
>
> ALBRIGHT: I don't think unconscious. I wouldn't say that.
>
> COUNSEL: Okay. Well, question, this is line 513, "Well, I know, I know one of my good friends is diabetic and when he gets his sugar low like that, he'll do stuff that it's almost like a bad dream." And his answer is, "Well, yeah, I." Question, "He, be, you know, drunk, okay or when something is going on, we do stuff that we regret but you know, you've been around long enough to know and he says what and then you say, we're all humans. We all make mistakes. I mean, it's like the saying goes." And he says, "right."
>
> . . . .
>
> "Question. But I believe that's what happened was—" And then he says, "No, I didn't. I wasn't even drinking that day." "Question. You weren't drinking that day?" "No." "Okay."

4



"No, I couldn't on account of my sugar." "Well, [unintelligible] with your sugar, you know, it has the same effect as being drunk."

. . . .

[O]ver on the next page, line 680, page 16. You're saying, "To help me explain it to them of why, Gene, this happened. It did happen, okay. Because it did happen and you're sorry that it happened we just want to figure out exactly why it happened. Was it like I said, it's because you made a bad decision or maybe wasn't thinking clearly?" And he says, "He and then it," and then you say, "Are you or are you bad, you know?" Answer, "If I had been, I had to, been asleep or out, okay." Answer, "So you know, that diabetes, I mean, I figured but don't doubt me or anything. I don't know what they're saying but, um-huh, but I wouldn't do something like that."

Through Davis's recitation of the interview with McCarty, the jury heard evidence that McCarty had, at some point, claimed that he might have been "asleep or out" or otherwise suffering from low blood sugar. The record is not pristine on this point, but the prosecutor's comments could be inferred from the testimony, and "[w]here an attorney's comment during closing arguments is directly reflecting or inferable from testimony at trial, there is no error." *Woodruff v. State*, 313 Ark. 585, 592, 856 S.W.2d 299, 303–04 (1993). The circuit court did not abuse its discretion in overruling McCarty's objection.

The next statement that McCarty claims was outside the record is the prosecutor's comment that the "only agreement" that the State had made with Pauline was that "she has to tell the truth and that in exchange for the truth she is going to prison." Pauline pled guilty to permitting abuse of a minor and was sentenced to six years' imprisonment; as part of her plea she was ordered to cooperate and to testify truthfully in this case. The only objection

McCarty raised below to the prosecutor's statement was that the prosecutor's argument was "unfair," but that is not what he argues on appeal. Thus, we affirm on this point. *See Reed*, *supra*.

Finally, McCarty lists several cases that discuss prosecutorial misconduct and notes that those cases resulted in reversals, but he does not apply them to this case and argue why they require us to reverse. This court will not research and develop arguments for McCarty. *See, e.g.*, *Flanagan v. State*, 368 Ark. 143, 243 S.W.3d 866 (2006).

Affirmed.

PITTMAN and GRUBER, JJ., agree.

*Erwin L. Davis*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Nicana C. Sherman*, Ass't Att'y Gen., for appellee.