Robert L. LeFEVER  *v.*  STATE of Arkansas

CA CR 04-1028                                      208 S.W.3d 812

Court of Appeals of Arkansas
Opinion delivered May 18, 2005

*Cindy M. Baker*, for appellant.

*Mike Beebe*, Att'y Gen., by: *David J. Davies*, Ass't Att'y Gen., for appellee.

DAVID M. GLOVER, Judge. Appellant, Robert LeFever, was convicted by a jury in the Western District of Carroll County of raping his sister-in-law, A.L., "between December 1998 and December 1999," and he was sentenced to ten years in the Arkansas Department of Correction. On appeal, he raises four issues: (1) the trial court erred in denying his motion to suppress his videotaped statement taken by J.R. Davenport of the Arkansas State Police; (2) the trial court erred in allowing his probation officer to testify about a statement made by him to the probation officer; (3) the trial court erred by refusing to allow a defense witness to testify with regard to the authenticity of a letter he asserted was allegedly written by A.L.; (4) there was insufficient evidence to establish that A.L. was thirteen years of age or younger at the time of the commission of the offense. We affirm appellant's rape conviction.

Although appellant's sufficiency argument is listed as his fourth issue on appeal, we must address it first. Preservation of an appellant's right against double jeopardy requires that appellate courts consider the challenge to the sufficiency of the evidence before alleged trial error is considered, even if the issue was not presented as the first issue on appeal. *Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002). Additionally, although appellant did not abstract his motion for directed verdict, a review of the record indicates that he did preserve his sufficiency argument in his directed-verdict motion that was made to the trial court. A directed-verdict motion is a challenge to the sufficiency of the evidence. *Fields v. State*, 349 Ark. 122, 76 S.W.3d 868 (2002).

When the sufficiency of the evidence is challenged, we consider only the evidence that supports the verdict, viewing the evidence in the light most favorable to the State. *Harris v. State*, 72 Ark. App. 227, 35 S.W.3d 819 (2000). The test is whether there is substantial evidence to support the verdict, which is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or another. *Id.* Witness credibility is an issue for the fact-finder, who is free to believe all or a portion of any witness's testimony and whose duty it is to resolve questions of conflicting testimony and inconsistent evidence. *Baughman v. State*, 353 Ark. 1, 110 S.W.3d 740 (2003).

■ Appellant's only contention with regard to the sufficiency of the evidence is that the State failed to establish that A.L. was thirteen at the time of the commission of the offense. We disagree. A.L., whose birthday is December 11, 1985, testified that she began babysitting for her sister, appellant's wife, in the summer of 1998, and that she and appellant first had sex that summer. On appeal, appellant points to testimony from A.L. that this first encounter occurred at appellant's house in Grandview and that his family did not live in Grandview until April 1999. However, the jury, when faced with conflicting evidence, was entitled to believe A.L.'s version of the events.

Nevertheless, appellant's videotaped statement corroborated A.L.'s testimony that their sexual encounters began before she was fourteen. In it, he said that he had sex with A.L. "probably half a dozen times" between January and March 1999 before he went to prison in Pennsylvania in April 1999. Therefore, even if the first sexual encounter did not occur until January 1999, A.L. was still only thirteen years old at that time. The jury had before it substantial evidence from which it could conclude that A.L. was only thirteen when appellant began having sex with her.

Appellant contends in his first argument on appeal that the trial court erred in denying his motion to suppress his videotaped statement. He presents four subpoints under this argument: (1) he was not warned of his rights under Rule 2.3 of the Arkansas Rules of Criminal Procedure; (2) his Fourth Amendment rights were violated; (3) the State failed to establish a valid waiver of his rights; (4) he was deceived into waiving his *Miranda* rights and was tricked into answering questions on a pretextual basis that the investigation allegedly involved his own daughter. We find none of these subpoints to be persuasive.

When reviewing a trial court's denial of a motion to suppress, the appellate court conducts "a *de novo* review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court." *Saulsberry v. State*, 81 Ark. App. 419, 423, 102 S.W.3d 907, 910 (2003) (citing *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003)).

At the suppression hearing, appellant's probation officer, Nancy Hunter, testified that on December 30, 2002, as a result of a telephone call from J.R. Davenport of the State Police Crimes Against Children Unit, she left a message on appellant's answering machine asking him to come to her office the next day. Appellant called her back that afternoon, and he told her that Ms. Davenport had called him and asked him to go to the sheriff's office the next morning. Hunter said that she told him to "go be a man," tell the truth, and quit playing games. She denied threatening to put him in jail if he did not go to the sheriff's office, and she said that she did not have the authority to do that. She stated that she never told appellant that he was under an obligation to go to the sheriff's office, but she did admit on cross-examination that she told him to report there at 10 a.m.

J.R. Davenport testified that she did not tell appellant that he had an obligation to go to the sheriff's office for an interview; however, she said that appellant did comply with her request. She Mirandized him prior to the interview, and he signed a waiver-of-rights form. In the interview, which was videotaped, appellant admitted that he had sex with his wife's sister and that it started in early 1999.

■ Under the first subpoint of his suppression argument, appellant contends that his videotaped statement should be suppressed because he was not informed of his rights under Rule 2.3 of the Arkansas Rules of Criminal Procedure, which provides:

> If a law enforcement officer acting pursuant to this rule requests any person to come to or remain at a police station, prosecuting attorney's office or other similar place, he shall take such steps as are reasonable to make clear that there is no legal obligation to comply with such a request.

In *State v. Bell*, 329 Ark. 422, 431, 948 S.W.2d 557, 562 (1997), our supreme court held that Rule 2.3 will no longer be interpreted "to

require a verbal warning of freedom to leave as a bright-line rule for determining whether a seizure of the person has occurred under the Fourth Amendment and whether a statement to police officers must be suppressed." Rather, the appellate courts now view a verbal admonition of freedom to leave as only a factor in the totality of the circumstances in reviewing compliance with Rule 2.3, and Arkansas courts follow *United States v. Mendenhall*, 446 U.S. 544 (1980), in determining whether a seizure of a person has occurred.

In *Mendenhall*, the United States Supreme Court held:

> We adhere to the view that a person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

> . . . .

> We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

> . . . .

> Our conclusion that no seizure occurred is not affected by the fact that the respondent was not expressly told by the agents that she was

> free to decline to cooperate with their inquiry, for the voluntariness of her responses does not depend upon her having been so informed. We also reject the argument that the only inference to be drawn from the fact that the respondent acted in a manner so contrary to her self-interest is that she was compelled to answer the agents' questions. It may happen that a person makes statements to law enforcement officials that he later regrets, but the issue in such cases is not whether the statement was self-protective, but rather whether it was made voluntarily.

446 U.S. at 553–56 (citations omitted).

In the present case, appellant was asked to come to the sheriff's office. His probation officer denied that she threatened to put him in jail if he did not comply with the request, and she testified that she never told him that he had to go to the sheriff's office, although she admitted on cross-examination that she told appellant to report to the sheriff's office at ten the next morning. Officer Davenport testified that she did not tell appellant that he had an obligation to go to the sheriff's office for an interview, but that he did comply with her request. Appellant drove to the sheriff's office with his family. Officer Davenport read appellant his Miranda rights before she began asking him any questions, and appellant signed a waiver-of-rights form. In the subsequent interview, which was videotaped, Officer Davenport was the only person in the room with appellant, and she never touched appellant in any manner or raised her voice during the questioning. None of the *Mendenhall* factors that would indicate an involuntary statement are present in the instant case. Given the totality of the circumstances, we cannot say that appellant's statement was not voluntary.

■ To the extent that it is not covered in appellant's first subpoint concerning Rule 2.3 of the Arkansas Rules of Criminal Procedure, appellant's second subpoint of his suppression argument that his Fourth Amendment rights were violated is not preserved for our review because appellant failed to get a ruling on this issue. In his argument, appellant states, "The [trial] Court, without addressing the Fourth and Fifth Amendment issues, summarily denied the Defendant's Motion to Suppress discussing only the 2.3 basis for suppression." An appellant must obtain a ruling on his argument to preserve the matter for this court; it was appellant's responsibility to obtain a ruling with respect to his argument alleging the violation of his Fourth Amendment rights, which he

admitted he did not do, and his failure to do so precludes review on appeal. *See Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003).

Nevertheless, even if we were to address the Fourth Amendment issue, we find the State's argument persuasive that as a probationer, appellant's supervision was a "special need" of the State that permitted a degree of impingement upon privacy that would not be constitutional if applied to the public at large. *See Williams v. State*, 321 Ark. 344, 902 S.W.2d 767 (1995). The State knew that appellant was on probation, and it had the authority to inquire about his behavior and compliance with the laws of the State.

Appellant's third and fourth subpoints under his first argument can be addressed together, as they both pertain to appellant's waiver of his rights. Although appellant attempts to characterize his videotaped confession as involuntary and obtained under deception, a review of the videotape reveals that he was read his rights prior to questioning, he stated that he understood those rights, and he signed a waiver of those rights. As discussed above, there is no indication that the waiver of appellant's rights was obtained under duress or coercion, and we therefore reject the third and fourth subpoints of appellant's first argument.

Appellant's second argument is that the trial court erred in allowing his probation officer to testify about a statement appellant made to the probation officer. At trial, Terry Maddox testified, over appellant's objection, that on August 12, 2003, when appellant was walking out of Maddox's office after a regularly scheduled visit, appellant made the comment that there were young girls all over the country taking advantage of older men and that something needed to be done about that. Maddox said that the statement was spontaneous, and because he was not sure that he believed what he heard, he asked appellant, "What did you say?" at which time appellant repeated the statement. Maddox said that after that, he just told appellant, "Oh, see you next time." Maddox testified that he was very surprised at appellant's comment, and that was why he asked him to repeat it.

On appeal, appellant characterizes his statement as a discussion, and he claims that Maddox attempted to elicit information from him about the case, even though Maddox knew that he was already represented by counsel, who was not present at the time

the statement was made. He argues that this "discussion" was a violation of his Sixth Amendment right to counsel. We disagree.

A suspect's spontaneous statement is admissible against him or her; on review, the focus is on whether the statement was made in the context of a police interrogation, meaning direct or indirect questioning put to appellant by the police with the purpose of eliciting a statement from him or her. *See Arnett v. State*, 353 Ark. 165, 122 S.W.3d 484 (2003). A spontaneous statement is admissible because it is not compelled or the result of coercion under the Fifth Amendment's privilege against self-incrimination; volunteered statements are not barred by the Fifth Amendment and are admissible. *Id.*

In the present case, appellant made this comment to his probation officer as he was walking out of the probation office; because he was not sure what appellant had said, Maddox asked appellant what he said. Appellant repeated the statement, and Maddox made no other comment except that he would see him next time. It is apparent that the trial judge believed that this statement was spontaneous on appellant's part, and we find no error in this ruling.

Appellant lastly contends in his third argument that the trial court erred in failing to allow his wife, Genine LeFever, who is A.L.'s older sister, to testify about the authenticity of a letter allegedly written by A.L. to the appellant in June 1999. In her testimony, A.L. had denied that she had written the letter. Genine LeFever testified that she had observed A.L.'s handwriting and would be able to recognize it; however, the trial court held that there had not been a sufficient foundation laid that she had seen enough of A.L.'s handwriting to recognize it. Appellant's counsel then elicited that Genine had observed A.L.'s handwriting "several" times and had seen her handwriting regularly during the time that A.L. babysat for her. Genine testified that she had only seen the front of A.L.'s diary, not the contents, and that A.L. had not written her notes, but that A.L. had written notes and had drawn with her children. The trial court sustained the prosecution's objection to Genine identifying the handwriting as A.L.'s, holding that appellant had not demonstrated the factual basis for Genine knowing A.L.'s handwriting and that seeing it "several" times was insufficient as to why she was familiar with A.L.'s handwriting.

The decision to admit or exclude evidence is within the sound discretion of the trial court, and the appellate courts will not reverse a trial court's evidentiary ruling absent an abuse of

discretion and a showing of prejudice. *Thomas v. State*, 349 Ark. 447, 79 S.W.3d 347 (2002). We cannot say that the trial judge, with the evidence before him, abused his discretion when he refused to allow Genine to testify regarding the letter allegedly written by A.L. Furthermore, even if it was an abuse of discretion, we fail to see how appellant was prejudiced by this refusal, as the contents of the letter did not go to the issue of whether appellant had sex with his thirteen-year-old sister-in-law.

Affirmed.

VAUGHT and BAKER, JJ., agree.