2014 Ark. App. 257

**Tom Buck STEELE, Appellant**

v.

**STATE of Arkansas, Appellee.**

No. CR–13–960.

Court of Appeals of Arkansas.

April 30, 2014.

Jeff Rosenzweig, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Laura Shue, Ass't Att'y Gen., for appellee.

BILL H. WALMSLEY, Judge.

A Hot Spring County jury found appellant Tom Buck Steele guilty of twenty counts of distributing, possessing, or viewing matter depicting sexually explicit conduct involving a child. On two counts, the jury sentenced Steele on each count to the maximum sentence of ten years' imprisonment and a $10,000 fine. On each of the other eighteen counts, the jury sentenced him to eight years and a $2,000 fine. The trial court ran the sentences consecutively for an aggregate term of 164 years' imprisonment and a fine totaling $56,000. On appeal, Steele argues that (1) the trial court erred in denying his motions for directed verdict, (2) the trial court erred in permitting reference to his possession of other pornographic images for which he was not charged, (3) the trial court violated constitutional principles and abused its discretion in ordering consecutive sentences of imprisonment, and (4) the trial court erred in refusing to give the jury an instruction on alternative sentencing. We affirm.

Agent Wes Baxter in the Cyber Crimes Division of the Attorney General's Office testified that the National Center for Missing and Exploited Children has identified hundreds of thousands of images of known child pornography and assigned them a SHA (secure hash algorithm) value, similar to a serial number or fingerprint. Through a peer-to-peer sharing network called Shareaza, Baxter located files with these SHA values on what was later determined to be Steele's computer. Baxter

downloaded two of those files onto his own computer to confirm that they contained images of child pornography. On September 15, 2011, Baxter determined that the IP address associated with the computer containing child pornography was registered to Steele at his home address in Malvern. Baxter then obtained a search warrant, which was executed on October 19, 2011. Baxter, along with local law-enforcement officers, entered Steele's residence and found two computers sitting side by side on a desk in Steele's bedroom. A Sony computer sat next to a newer Dell computer, which was hooked up to a monitor, keyboard, and mouse.

In his statement to police, Steele acknowledged that he owned both computers in his home. Steele told law-enforcement officers that his nine-year-old son lived with him. He said that others had lived with him in the past but that it had been at least six months since another adult lived with him. Steele said that his ex-wife had a key to his home because of their son. Steele initially stated that no one had access to his Sony computer but then stated that unidentified individuals, and probably his adult son, knew his passwords. When asked about the possibility that his adult son had been looking at child pornography over the past year, Steele said that "[t]here's no way." Steele was familiar with Shareaza. According to Steele, he used only the Dell computer and not the Sony, which he described as "just a spare old computer." Steele could not remember the last time anyone had used the Sony computer, but he then recalled that approximately one month earlier he had updated the antivirus software on the Sony computer. Steele also told officers that he worked in nuclear medicine at a hospital, that his hours were 6:30 a.m. to 3:30 p.m. every day, and that he had not recently taken any time off from work.

Special Agent Jeff Shackelford, the Director of Forensic Services for the Attorney General's Office, testified as an expert in computer-forensic analysis. He testified that only the Sony computer contained images of child pornography. That computer also contained pictures of Steele, email accounts, and browser history, including website information for Steele's son's elementary school, which was last accessed on May 27, 2011. According to Shackelford, the Sony computer was password protected, whereas the Dell computer was not. Shackelford stated that there were forty-four search terms entered into Shareaza on the Sony computer and that forty-three of those terms were indicative of child-pornography searches. Shackelford stated that he found nearly 100 files of suspected child pornography. Eighteen files were located in the Shareaza folder, sixty-six files were located in the documents-and-settings folder, and the remainder were found in the recycle bin. Shackelford testified that the Sony computer had a paid subscription to Norton antivirus software dating back several years. Shackelford testified that if a person was downloading files off of a sharing network like Shareaza, it would be important to have antivirus protection because of the possibility of obtaining malicious files.

Gail Drobena, the Senior Human Resources Manager at Mercy Hospital in Hot Springs where Steele worked, testified to relevant dates and times in 2010 and 2011 from time sheets showing when Steele had clocked in and out at work. She was questioned about two dates in particular, October 5 and 6 of 2011, which was shortly before the search warrant was executed at Steele's residence. Drobena testified that Steele had clocked out at 3:12 p.m. on October 5 and that he was not scheduled to work on October 6. Shackelford testified earlier that he had compared Steele's time sheets with the dates and times that the

ninety-eight files of child pornography were created and last accessed and that not a single folder was opened at a time when Steele was confirmed to have been at work. When specifically questioned about the images associated with the twenty counts against Steele, Shackelford indicated that many had last been accessed on the afternoon of October 5 and throughout the day on October 6, 2011.

Defense counsel moved for directed verdicts on each count, arguing that the State had failed to sustain its burden of proof because neither agent could identify Steele as the person who created, modified, accessed, or downloaded the pornographic images onto the computer. The trial court denied the motions.

Angela Arbuckle, Steele's ex-wife, testified that Steele had full custody of their son because she had a drug problem in the past. Arbuckle stated that she had a key to Steele's house and was permitted to use Steele's computer. She testified that Steele insisted that no one but he and their nine-year-old son was permitted to use the newer Dell computer but that she knew the passwords for the Sony computer. Arbuckle testified that, unbeknownst to Steele, she had taken her boyfriend and an acquaintance to Steele's home and allowed them access to Steele's Sony computer while Steele was at work. When shown a picture of the two computers sitting side by side on the desk in Steele's bedroom, Arbuckle could not identify the Sony computer. Arbuckle further testified that Steele had "a lot of people," including an adult son and daughter, living at his home off and on but that she was not certain of the dates.

Steele's former father-in-law testified that, on the afternoon of October 5 through October 6, Steele was with him and his girlfriend in Missouri. He stated that it was Steele's first motorcycle trip.

The girlfriend confirmed that the visit took place on those dates at her home in Missouri.

Steele took the stand in his own defense. He testified that he "had no idea" how child pornography got on his Sony computer. According to Steele, Shareaza was installed by someone else and was used only for downloading music. He testified that since 2005 "literally tons" of people had access to the Sony computer. Steele stated that his adult son had moved out in April or May 2011 but that the son had a key and was at his house "constantly." Steele testified that his employer had scheduled October 6 as the date on which a new system was to be installed on the machine he worked with and that, when questioned by agents on October 19, he simply did not recall taking the motorcycle trip to Missouri.

## I. Sufficiency of the Evidence

A directed-verdict motion is a challenge to the sufficiency of the evidence. *LeFever v. State*, 91 Ark.App. 86, 208 S.W.3d 812 (2005). When the sufficiency of the evidence is challenged, we consider only the evidence that supports the verdict, viewing the evidence in the light most favorable to the State. *Id.* The test is whether there is substantial evidence to support the verdict, which is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or another. *Id.* Witness credibility is an issue for the fact-finder, who is free to believe all or a portion of any witness's testimony and whose duty it is to resolve questions of conflicting testimony and inconsistent evidence. *Id.* "A jury need not lay aside its common sense in evaluating the ordinary affairs of life, and it may infer a defendant's guilt from improbable explanations of incriminating conduct." *Walley v.*

*State,* 353 Ark. 586, 594, 112 S.W.3d 349, 353 (2003). Because a criminal defendant's intent can seldom be proved by direct evidence, it must usually be inferred from the circumstances surrounding the crime. *Feuget v. State,* 2012 Ark. App. 182, 394 S.W.3d 310.

A person commits the offense of distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child if the person knowingly possesses or views through any means, including on the internet, any photograph, film, videotape, computer program or file, computer-generated image, video game, or any other reproduction that depicts a child or incorporates the image of a child engaging in sexually explicit conduct. Ark.Code Ann. § 5–27–602(a)(2) (Repl.2006). It is a Class C felony for the first offense. Ark.Code Ann. § 5–27–602(b)(1). For a Class C felony, the sentence shall not be less than three years nor more than ten years. Ark. Code Ann. § 5-4–401(a)(4).

Steele argues that the jury only speculated that he knowingly possessed child pornography. He points out that other people had access to his Sony computer and that at least one other person had the passwords. Steele contends that, given the joint access, the State had to prove something more to connect him to the computer. He likens his case to *United States v. Moreland,* 665 F.3d 137 (5th Cir. 2011), in which the defendant's conviction for knowingly possessing child pornography was reversed and dismissed based on insufficient evidence to support the conviction because several persons had access to the computer on which the images were found. *Moreland,* however, is distinguishable in that at least three adults, including the defendant's father, lived in the home; there was evidence that the defendant's father, who was said to be "obsessed" with pornography, often used the home computers at night when everyone else was asleep; a police officer, who was not qualified as an expert in computer forensics, was able to recover deleted images but not dates and time stamps; and there was evidence that the defendant's father had destroyed the hard drive of his own computer after police had seized the defendant's home computers.

In cases involving constructive possession of child pornography on a computer, where joint access is alleged, the Eighth Circuit has required "ownership, dominion or control over the [pornographic material] itself, or dominion over the premises in which the [pornographic material] is concealed." *See, e.g., United States v. Acosta,* 619 F.3d 956, 961 (8th Cir.2010) (alteration in original) (citation omitted). Although there was some conflicting evidence of joint access to the Sony computer, the jury was not required to believe such testimony. Even assuming that there was joint access, the evidence was sufficient to show that Steele exercised dominion and control over the Sony computer.

The Sony computer belonged to Steele, and the IP address was registered to Steele. The computer was kept in his bedroom and was readily accessible by switching cords with the Dell computer. The computer held personal pictures, private email accounts, and browser history showing website information related to his son's elementary school. Steele said that he had recently updated the antivirus software on the Sony computer. This evidence tended to connect Steele himself to the Sony computer and demonstrated that he exercised dominion and control over the computer that held nearly 100 images of child pornography in three separate locations.

In addition to being password protected, as noted above, the Sony computer was protected with antivirus software. The ev-

idence showed that such protection was important with file sharing but would have been unnecessary for an old computer that Steele did not use. There was testimony that there were no viruses on the Sony computer that could account for the presence of the child pornography.

Steele acknowledged that he knew about Shareaza, and the evidence showed that, out of forty-four search terms entered on Shareaza, forty-three pertained to child pornography. Although Steele claimed that the program was strictly for downloading music, evidence showed that there was only one music search term.

Steele further argues that his alibi witnesses verified that he was elsewhere on October 5 and 6 when the images were last accessed; however, the jury was not required to believe those witnesses. Moreover, Arbuckle testified that she and her companions accessed the Sony computer only at times when Steele was at work. The evidence showed that not a single file was created or accessed at a time when Steele was confirmed to have been at work. We hold that substantial evidence supports Steele's convictions.

## II. *Rule 404(b) Evidence*

At trial, the court permitted the State to introduce, over Steele's objections, testimony that the Sony computer contained nearly eighty images of child pornography, for which Steele was not charged with possessing. Steele objected to the Rule 404(b) evidence on the basis of Ark. R. Evid. 403, which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

Arkansas Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove character, but the evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Trial courts are afforded wide discretion in evidentiary rulings; specifically, a trial court's ruling on issues relating to admission of evidence under Rules 401, 403, and 404(b) is entitled to great weight and will not be reversed absent an abuse of discretion. *Anderson v. State*, 2009 Ark. App. 804, 372 S.W.3d 385.

On appeal, Steele contends that the trial court abused its discretion in admitting such testimony when he was "accused only of downloading and possessing the material, not creating it." Steele was not required to have created the pornographic material himself in order to be found guilty of an offense under Ark.Code Ann. § 5–27–602(a)(2). Simple possession will suffice.

Steele consistently denied knowing anything about the child pornography on his Sony computer. The jury could have reasonably concluded that, given the number of images on the computer and the access times, it was unlikely that Steele could not have known about them. The evidence was relevant to show knowledge, intent, and absence of mistake or accident and was thus properly admitted under Rule 404(b). We cannot say that the trial court abused its discretion in allowing the State to prove its case as conclusively as possible by referring to the total number of images found on Steele's computer. *See Williams v. State*, 374 Ark. 282, 287 S.W.3d 559 (2008).

## III. *Consecutive Sentences*

When multiple sentences of imprisonment are imposed on a defendant convicted of more than one offense, the sentences shall run concurrently unless, upon recommendation of the jury or the

court's own motion, the court orders the sentences to run consecutively. Ark.Code Ann. § 5–4–403(a) (Repl.2006). It is well established that the question of whether sentences should run consecutively or concurrently lies solely within the province of the trial court. *Throneberry v. State,* 2009 Ark. 507, 342 S.W.3d 269. The exercise of that discretion will not be altered on appeal unless it is clearly shown to have been abused. *Id.* The appellant assumes a heavy burden of demonstrating that the trial judge failed to give due consideration to the exercise of his discretion in the matter of consecutive sentences. *Id.*

Our supreme court has held that if the sentence fixed by the trial court is within the legislative limits, we are not free to reduce it even though we might consider it to be unduly harsh. *Bunch v. State,* 344 Ark. 730, 43 S.W.3d 132 (2001). There are three extremely narrow exceptions: (1) where the punishment resulted from passion or prejudice, (2) where it was a clear abuse of the jury's discretion, or (3) where it was so wholly disproportionate to the nature of the offense as to shock the moral sense of the community. *Id.*

Steele argues that the length of his sentence amounted to cruel and unusual punishment, especially considering that he was a nonviolent first offender who merely possessed contraband images. Steele argues that the trial court erred in treating the possession of images from the internet—"a quintessential hands-off offense"—as something for which a life sentence was appropriate.

The constitutional prohibition against cruel and unusual punishment is directed toward the kind of punishment imposed, not its duration. *Hinton v. State,* 260 Ark. 42, 537 S.W.2d 800 (1976). The fact that punishment is severe does not make it cruel or unusual, nor does the imposition of the maximum sentence for an offense. *Id.* Ordering sentences to run consecutively is not cruel or unusual punishment, and our supreme court has rejected the argument that the cumulative effect of consecutive sentences can render the punishment cruel or unusual. *Id.* Thus, we hold that the trial court's imposition of consecutive sentences totaling 164 years' imprisonment was not cruel and unusual punishment.

Next, Steele maintains that the judge's remarks from the bench indicated that the consecutive sentences resulted from passion or prejudice and that the length of the sentence is wholly disproportionate to the nature of the offense. Steele further argues that the trial judge's comments about his decision to run the sentences consecutively indicate that he did so because of what he perceived to be the jurors' reactions to the images of child pornography.

While Steele was sentenced to consecutive terms of imprisonment at the conclusion of the trial, the trial court later held a hearing on Steele's motion to reconsider sentencing. There is no indication that the trial court failed to consider factors urged by defense counsel, including that Steele was a nonviolent first offender, had no criminal history, was sixty-one years old, and was raising a young son. Each sentence was within the statutory range of punishment, and none of the narrow exceptions noted above apply. While the trial court did refer to the jurors' reactions to the images, it nevertheless exercised its discretion in noting that there were twenty counts and that each child depicted in those images was a victim of "egregious" abuse. The trial court concluded that possession of each image deserved its own punishment. Under these circumstances, we cannot say that the trial court abused its discretion in running the sentences consecutively.

## IV. *Alternative–Sentencing Instruction*

 Arkansas Code Annotated section 16–97–101(4) (Repl.2006) provides that the court, in its discretion, may instruct the jury that counsel may argue as to alternative sentences for which the defendant may qualify. The jury, in its discretion, may make a recommendation as to an alternative sentence; however, this recommendation shall not be binding on the court. Ark.Code Ann. § 16–97–101(4). The decision to allow alternative sentencing is reviewed for an abuse of discretion. *Hoodenpyle v. State,* 2013 Ark. App. 375, 428 S.W.3d 547. This standard of review is a high threshold, and it requires that a trial court act improvidently, thoughtlessly, or without due consideration. *Id.* The mechanical imposition of the jury's recommended sentences or an unwavering court policy refusing to instruct the jury on alternative sentences with respect to certain offenses is not an exercise of discretion. *Rodgers v. State,* 348 Ark. 106, 71 S.W.3d 579 (2002).

Steele argues that the legislature has specifically provided that the offense for which he was found guilty is eligible for probation, yet the trial court rejected his proffered alternative-sentencing instruction based on the "sexual nature" of the offense and the fact that some jurors cried over what they saw depicted in the images.

 The trial court exercised its discretion by citing specific reasons for finding that an instruction on alternative sentencing was inappropriate, including the jurors' reactions to the images. Further, the trial court reasoned that the jury convicted Steele on all twenty counts and sentenced him to much more than the minimum punishment. The trial court concluded that it was unlikely that the jury would have recommended probation for Steele's possession of child pornography. Given the ultimate sentence imposed, it was also unlikely that the trial court would have accepted a non-binding recommendation of probation. We cannot say that the trial court abused its discretion in refusing to give the instruction.

Affirmed.

PITTMAN and HIXSON, JJ., agree.