Cite as 2020 Ark. App. 68

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR–19–397

| | |
|---|---|
| ROCKY TALIAFERRO<br><br>APPELLANT<br><br>V.<br><br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** February 5, 2020<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CR-17-139]<br><br><br>HONORABLE GARY ARNOLD, JUDGE<br><br>REVERSED AND DISMISSED IN PART; AFFIRMED IN PART |

## RAYMOND R. ABRAMSON, Judge

Rocky Taliaferro appeals his convictions of internet stalking of a child and 104 counts of distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child.[1] On appeal, Rocky argues that the circuit court erred by denying his directed-verdict motion on the internet-stalking-of-a-child charge because the State presented insufficient evidence that he made an effort to arrange a meeting with a minor. He also argues that the circuit court erred by denying his directed-verdict motion on 104 counts of distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child because the State presented insufficient evidence that he knowingly

---

[1]Rocky was convicted of 106 counts of distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child; however, he appeals only 104 counts.

possessed the child pornography. We reverse and dismiss the internet-stalking-of-a-child conviction and affirm the convictions for distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child.

On March 2, 2017, the State charged Rocky with internet stalking of a child, computer child pornography, and 106 counts of distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child. The case proceeded to trial on January 19, 2019.

At trial, Ryan Jacks, a state trooper assigned to the cyber-crimes division, testified that he began investigating Rocky after the Arkansas State Police received a tip from the National Center for Missing and Exploited Children (NCMEC). Specifically, NCMEC notified the Arkansas State Police that two sexually explicit images of children had been uploaded to a chat room called ChatStep on July 28, 2016, and that the IP address associated with the upload belonged to an AT&T customer named Madison Taliaferro in Arkansas. He noted that Madison's AT&T account was a secured account with password protection at a private residence, not a free Wi-Fi account. He explained that he determined Madison's home address and that Rocky, Madison's son, also lived at the residence.

Jacks testified that on October 5, 2016, he went to the Taliaferro residence and that Rocky answered the door. He asked for Rocky's consent to search the electronic devices in the house due to the NCMEC tip, but Rocky refused. Jacks stated that he then obtained a search warrant and that a subsequent search of a laptop found in the home showed that a user had logged in to ChatStep on July 28, 2016, at the exact time the

2

pornographic images had been uploaded to ChatStep. He explained that the laptop had three users—the administrator, Rocky, and Ariel, who is Rocky's sister. Jacks testified that Rocky had told him that he was the only individual who had access to the laptop from January 2016 through July 2016 because Ariel had moved out of the home in January 2016. Jacks further testified that he verified that Madison was at work on the date and time the images were uploaded to ChatStep.[2]

Jacks testified that he found 930 pornographic images on the laptop that had been downloaded under Rocky's username. Jacks stated he could not determine the exact dates that the images were downloaded, but he stated that most of the images had a creation date of September 1, 2011. He noted that because most of the images had the same creation date, the images could have been downloaded from an external drive such as a USB drive. He stated that 96 external devices had been connected to the laptop, which was a large number of devices. He noted that Rocky had been a user on the laptop from 2011 to 2016.

Jacks testified that of the 930 pornographic images, he considered 705 images to be category 1, which are images showing very lewd and sexual behavior with a minor under the age of eighteen. He stated that he considered 225 of the 930 images to be category 2, which are images in which he could not determine the age of the victim. He further testified that he located the two images that were uploaded to ChatStep on the laptop under the username Rocky. He explained that at the prosecutor's request, he selected 106 images from the laptop that were undeniably child pornography, which included

---

[2]Madison worked for a company that subcontracted with the Arkansas Department of Correction to complete dental work.

sadomasochistic and bestiality images. The State introduced those 106 images into evidence.

Jacks further testified that he examined the search history for the username Rocky and that the history included the search terms "fuck," "infant," "kids," "young," and "Tori." He stated that "Tori" is the most common term used for individuals who download child pornography. He explained that "Tori" is the most victimized person in child-pornography history and that she was abused from a young age until she left the home. He noted that her images have been shared millions of times.

Jacks also testified that he searched Rocky's iPhone and that he found a photo of a driver's license that belonged to a fifteen-year-old girl named K.K. Jacks further explained that the iPhone contained thousands of messages between Rocky and K.K. between June 19 and July 3, 2016. He noted that K.K. lived with her father in Missouri, but at the time of her conversations with Rocky, she was visiting her mother in Benton. The communications between Rocky and K.K. included the following messages on June 23:

ROCKY: ; ) we would have sex all day. Lol. This is for sure

K.K.: I have nothing to do next week : )

ROCKY: ; ) oh yea? How would we?

K.K.: However you want

ROCKY: How would I pick you up with out anyone knowing? Lol

K.K.: Well my brother doesn't need to know where I go

ROCKY: Lol well what about your mom?

K.K.: That I went out with friends

4

ROCKY:     But want she be there at the house?

K.K.:     Not during the week. Which the only time I'll be there.

ROCKY:     Mmmm : ) let me think on it. About how. lol

K.K.:     Okay. Well it can't be Wednesday

ROCKY:     Ok. Monday Tuesday Thursday Friday?

K.K.:     Yeh. But I wouldn't pick Friday honest

ROCKY:      Ok. Lol

K.K.:     Yeh. But only if you want.

ROCKY:     I do want to. lol. Believe me.

K.K.:     ok I believe you.

ROCKY:     ; ) you know in Arkansas legal age is 16. Lol

K.K.:     Whatttt I didn't know that. Well I'll be 16 in September if you wanna be safe

ROCKY:     I'm not sure, you have got me really turned on ; ) lol

. . . .

ROCKY:     Well 16 will be safer. But I'm not sure yet? ; ) lol

K.K.:     I'll be back around thanksgiving or Christmas

ROCKY:     That is a while. Lol

K.K.:     I'm a patient person

ROCKY:     Ok lol

K.K.:     So wait?

ROCKY:     Let me think about it. Lol. Either we do or we wait ; ) lol

K.K.:     ok

ROCKY: What do you feel comfortable with?

K.K.: Waiting because I really don't want you getting in trouble in any way.

ROCKY: Ok then we will wait ; ) lol

On June 25, the two exchanged the following messages:

ROCKY: Oh yea? Mmm maybe you should start playing with you self, and I'll be there shortly . . . Mmmm I will rip your shorts off and go down on you, I want to taste your sweet pussy so bad

K.K.: Oh my quit it. ; ) I don't do that.

K.K.: But I'm game

K.K.: You're not really gonna come are you tho? Bc my parents are here

ROCKY: No I'm not. lol I wouldn't do that and cause a scene. It's to hard to quit it. You sure your don't want to touch yourself and imagine I'm inside you. ; )

On June 26, they exchanged the following messages:

ROCKY: Well, nothing could happen right? To many obstacles in the way. Like you said, your family with age. You live in mo. Doesn't matter what we think.

ROCKY: I mean even if we wanted to. How could it happen?

K.K.: Idk I just like to think about stuff like that I guess

ROCKY: Are ya thinking? Lol

K.K.: No I was workin

ROCKY: Well yea, me too lol. I would date ya. Even when you turn 16, and you can consent to sex. Parents wouldn't allow it to happen. Lol. 18 it wouldn't matter

On June 28, Rocky and K.K. exchanged the following messages:

ROCKY: You at home by yourself today?

K.K.: I mean Cameron's [K.K.'s brother] here.

. . . .

ROCKY: Was thinking about kidnapping ya. Lol

ROCKY: Yea : ) lol been casing out the scenarios. Lol.

K.K.: I wouldn't.

ROCKY: Lol I Know. Just a good thought.

K.K.: Yeh.

K.K. then testified that she first met Rocky at the Saline County Boys & Girls Club in Benton in 2007 when she was six or seven years old. She explained that she moved to Missouri when she was thirteen, and Rocky reconnected with her on social media when she was fifteen. She stated that they began communicating via text messages because she had unlimited messaging. She testified that their conversations involved sex and that she eventually stopped communicating with Rocky because she was afraid of actual sexual contact. She stated that he had asked her to send him photos of her body and that she had done so. K.K. recalled two instances in which Rocky said that he wanted to meet her, and she noted that she was in Arkansas during that summer but that she returned to Missouri around July 3.

At the conclusion of the State's case, Rocky moved for a directed verdict on the internet-stalking-of-a-child charge and argued that the State had presented insufficient evidence that he had made an effort to arrange to meet with K.K. He also moved for a directed verdict on 104 counts of possession of child pornography and argued that the

7

State presented insufficient evidence that he had knowledge that the images were on the computer.[3] The court denied both motions.

The jury later convicted Rocky of internet stalking of a child, computer child pornography, and 106 counts of distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child. Rocky was sentenced to a total of 160 years' imprisonment. This appeal followed. On appeal, Rocky argues that the circuit court erred by denying his directed-verdict motions on the internet-stalking-of-a-child charge and on 104 counts of possession of child pornography.[4]

A directed-verdict motion is a challenge to the sufficiency of the evidence. *LeFever v. State*, 91 Ark. App. 86, 208 S.W.3d 812 (2005). When the sufficiency of the evidence is challenged, we consider only the evidence that supports the verdict, viewing the evidence in the light most favorable to the State. *Id.* The test is whether there is substantial evidence to support the verdict, which is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or another. *Id.* Witness credibility is an issue for the fact-finder, who is free to believe all or a portion of any witness's testimony and whose duty it is to resolve questions of conflicting testimony and inconsistent evidence. *Id.* A jury need not lay aside its common sense in evaluating the ordinary affairs of life, and it may infer a defendant's guilt from improbable explanations of incriminating conduct. *Steele v. State*, 2014 Ark. App. 257, 434 S.W.3d 424.

---

[3]Rocky did not challenge the sufficiency of the evidence for the two counts concerning the images that had also been uploaded to ChatStep.

[4]Rocky does not challenge his conviction of computer child pornography.

On appeal, Rocky first argues that the circuit court erred by denying his directed-verdict motion on the internet-stalking-of-a-child charge because the State presented insufficient evidence that he made an effort to arrange a meeting with K.K. He asserts that at most, the evidence shows that he and K.K. discussed the possibility of meeting to have sex at an indefinite time after K.K. reached the legal age to consent.

The relevant statute, Arkansas Code Annotated section 5-27-306(a)(1) (Supp. 2019), provides:

> (a) A person commits the offense of internet stalking of a child if the person being twenty-one (21) years of age or older knowingly uses a computer online service, internet service, local internet bulletin board service, or any means of electronic communication to:
>
> > (1) Seduce, solicit, lure, or entice a child fifteen (15) years of age or younger in an effort to arrange a meeting with the individual for the purpose of engaging in:
> >
> > > (A) Sexual intercourse;
> > >
> > > (B) Sexually explicit conduct; or
> > >
> > > (C) Deviate sexual activity

A violation of this subsection is a Class B felony if the person "attempts to arrange a meeting with a child fifteen (15) years of age or younger," even if a meeting never takes place. Ark. Code Ann. § 5-27-306(b).

Our supreme court has held that "effort to arrange a meeting" means that the defendant "must have made a determined attempt to organize or plan a coming together." *Holcomb v. State*, 2014 Ark. 141, at 4, 432 S.W.3d 600, 603. In *Holcomb*, our supreme court reversed a conviction for internet stalking of a child, holding that the State presented insufficient evidence that the defendant made a determined attempt to arrange a meeting.

9

*Id.* The defendant only "pose[d] hypotheticals" about meeting the minor and declined the minor's request to meet several times. *Id.* at 9, 432 S.W.3d at 605.

In this case, the circumstances are similar to those in *Holcomb.* The text messages between Rocky and K.K. show that they discussed meeting for sexual activity, but they decided to delay the meeting until K.K. turned sixteen. Further, on other occasions when Rocky proposed a meeting, he quickly stated that he did not actually plan to go to K.K.'s house. These messages do not demonstrate that Rocky made a determined attempt to plan to meet K.K. As in *Holcomb*, Rocky only "pose[d] hypotheticals" about meeting K.K. We therefore hold that there was insufficient evidence to find that Rocky's conduct satisfied the statutory requirements. Thus, the circuit court erred in denying his directed-verdict motion, and Rocky's conviction for internet stalking of a child must be reversed and dismissed.

Rocky also argues that the circuit court erred by denying his motion for a directed verdict on 104 counts of possession of child pornography because the State presented insufficient evidence that he knowingly possessed the child pornography found on the laptop. He acknowledges that Jacks's testimony established that the images were downloaded using the username Rocky; however, he asserts that the State presented no evidence that he actually used that username or the laptop. He points out that his sister and father had access to the laptop and that the documentary evidence shows that the username Rocky did not require a password. He further points out that the laptop is mobile and that the images could have been downloaded when it was connected to an unsecure wireless network. He notes that all the pornographic images had been deleted

and that there is no evidence that he knew the images had been downloaded to the computer.

A person commits the offense of distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child if the person knowingly possesses or views through any means, including on the internet, any photograph, film, videotape, computer program or file, computer-generated image, video game, or any other reproduction that depicts a child or incorporates the image of a child engaging in sexually explicit conduct. Ark. Code Ann. § 5-27-602(a)(2) (Repl. 2013).

> In cases involving constructive possession of child pornography on a computer, where joint access is alleged, the Eighth Circuit has required 'ownership, dominion or control over the [pornographic material] itself, or dominion over the premises in which the [pornographic material] is concealed.' *See, e.g.*, *United States v. Acosta*, 619 F.3d 956, 961 (8th Cir. 2010) (alteration in original) (citation omitted).

*Steele v. State*, 2014 Ark. App. 257, at 7, 434 S.W.3d 424, 429.

In this case, we hold that substantial evidence supports Rocky's convictions for possession of child pornography. The State presented sufficient evidence to show that Rocky exercised dominion and control over the laptop containing hundreds of images of child pornography. The laptop was found in the residence where Rocky lived, and the laptop contained the username Rocky. Even though there was evidence of joint access, the evidence also showed that the computer had other usernames, and the images were downloaded under the username Rocky. Further, the username Rocky had a search history that included common search terms for child pornography, and Rocky told Jacks that he had exclusive access to the computer when the child-pornographic images were uploaded to the chatroom.

11

On appeal, Rocky's argument for reversal principally poses numerous questions and hypotheticals concerning the thoroughness of Jacks's investigation of him and the laptop; however, his questions attack the credibility of the investigation, which was an issue for the jury. Further, a jury need not lay aside its common sense in evaluating the ordinary affairs of life, and it may infer a defendant's guilt from improbable explanations of incriminating conduct. *See Steele*, 2014 Ark. App. 257, 434 S.W.3d 424. Moreover, when the sufficiency of the evidence is challenged, we consider only the evidence that supports the verdict. *See LeFever*, 91 Ark. App. 86, 208 S.W.3d 812. Considering the evidence in this light, we hold that there was sufficient evidence to show that Rocky knowingly possessed the child pornography. We therefore affirm his convictions of 104 counts of distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child.

Reversed and dismissed in part; affirmed in part.

MURPHY, J., agrees.

GRUBER, C.J., concurs.

**RITA W. GRUBER, Chief Judge, concurring**.  While I agree with the majority opinion that we must reverse the internet-stalking conviction based on our supreme court's interpretation of the statute in *Holcomb v. State*, 2014 Ark. 141, 432 S.W.3d 600, I write separately to express my concern with the effect of the narrow interpretation. The supreme court was faced with determining whether there was sufficient evidence to demonstrate that Holcomb acted in an "effort to arrange a meeting with" a detective using an internet profile for a fictional fifteen-year-old girl.  The messages were similar to the

messages in the present case in that there were discussions of meeting to engage in sexual activity, but there was nothing concrete as to when or where the meeting would take place. In reversing Holcomb's conviction, the supreme court stated that "[a]though Holcomb's messages pose hypotheticals, they do not demonstrate he made a determined attempt to plan to meet [the detective]." *Id.* at 9, 432 S.W.3d at 605. The court also noted that Holcomb declined the detective's request to meet several times. *Id.*

The messages about when and how appellant would meet with K.K. are considered hypotheticals under a *Holcomb* analysis. However, the facts in this case are different because appellant had a past relationship with K.K. as her former youth soccer coach. K.K. stated that she looked at appellant as a "mentor" and "somebody she looked up to and trusted." She also said she felt safe around him growing up. Although not completely certain, K.K. testified that appellant initiated contact with her through social media, and they began messaging. She described the messages as "just normal conversations talking about life and how have you been lately," but appellant began making sexual references. K.K. testified that the conversation became uncomfortable and that she became afraid there would be sexual contact, which she did not want. In contrast to *Holcomb*, appellant was in the same city as K.K. when he was texting her about meeting and even told her at one point he would "be there shortly" but quickly reconsidered when K.K. asked if he was going to come over because her parents were home.

In my mind, we have lost the importance of the first part of the statute which requires the person to "seduce, solicit, lure, or entice an individual that the person believes to be fifteen (15) years of age or younger in an *effort* to arrange a meeting[.]" (Emphasis

13

added). Stalking is defined as "to pursue or approach stealthily." *The Oxford Dictionary and Thesaurus*, 1482 (Am. ed. 1996). This definition of stalking is consistent with an effort to "seduce, solicit, lure or entice."

Penal statutes are to be strictly construed, and all doubts are to be resolved in favor of the defendant. *Torres v. State*, 2019 Ark. 101 at 10, 571 S.W.3d 456, 462. However, even a penal statute must not be construed so strictly as to defeat the obvious intent of the legislature. *Id.* I recognize that since *Holcomb* was decided, the legislature has had the opportunity to amend the legislation. It is well settled that a subsequent interpretation of a statute by the supreme court becomes a part of the statute itself. *State v. Griffin*, 2017 Ark. 67, at 6, 513 S.W.3d 828, 831 (citing *Corn v. Farmers Ins. Co.*, 2013 Ark. 444, 430 S.W.3d 655). The legislature is presumed to be familiar with the appellate court's interpretation of a statute, and if it disagrees with that interpretation, it can amend the statute. *Id.* Without such an amendment, however, an appellate court's interpretation remains the law. *Id.*

For these reasons, I concur.

*Culpepper Law Firm, PLLC*, by: *Ryan K. Culpepper*; and *Hurst Law Group, P.A.*, by: *Q. Byrum Hurst*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.