

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–13–610

| | | |
|---|---|---|
| WENDI COX | APPELLANT | **Opinion Delivered** May 21, 2014 |
| V. | | APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT [NO. CR–2012-79] |
| STATE OF ARKANSAS | APPELLEE | HONORABLE LARRY W. CHANDLER, JUDGE |
| | | AFFIRMED; REMANDED TO CORRECT SENTENCING ORDER |

## RITA W. GRUBER, Judge

Appellant Wendi Cox was convicted by a jury of eight counts of theft for stealing horses, a horse trailer, and tack from Southern Arkansas University (SAU) and sentenced to consecutive sentences totaling sixty years' imprisonment.[1] On appeal, she argues that the trial court erred in denying her motion for directed verdict because no credible evidence of her guilt was introduced. Specifically, she contends that the only evidence presented to the jury linking her to the crimes was testimony that was inconsistent or was provided by individuals with motives to lie. We hold that substantial evidence supports the jury's verdict, and we

---

[1]The sentencing order does not correctly reflect the court's order that all of the sentences are to run consecutively because no box is checked on several of the counts. We therefore remand with instructions to the circuit court to check the appropriate boxes after each count to reflect its decision.

 

affirm her convictions.[2]

Appellant's boyfriend, William "Billy" Hamilton, testified at trial that appellant and her daughter, Jaci Jackson, developed a plan to steal horses from SAU in retaliation for an alleged assault on Jaci by one of the SAU rodeo team members. At that time, Jaci was a member of the rodeo team. He said that the original plan was to sell the horses. He testified that the plan was carried out by him and a friend of his, George Berrish, on November 3, 2011. He testified that he and George went to SAU, hooked up appellant's truck to a horse trailer, loaded five horses into the trailer, took some bridles and saddles, and went to appellant's house. He and appellant later moved the trailer to the home of appellant's aunt and uncle, several miles from appellant's home.

George's testimony confirmed Billy's account of the events. He testified that appellant gave them a map of the horse stalls, they used appellant's truck to steal the trailer and horses, and there were phone calls between Billy and George and appellant about the thefts. He said that Billy sent a blank text to Jaci to let her know when the thefts had been accomplished. George testified that the next day, Billy, appellant, and he moved the horses from appellant's property and tied them to a tree. He said that appellant asked them to kill one of the horses because it might have a tracking device. Billy also testified that it was appellant's idea to kill one of the horses, so Billy shot the horse and "quartered him." Billy and George both testified that they attempted to take the remaining four horses to Texas but got lost and tied

---

[2]This is the second time this case has come before us on appeal. In *Cox v. State*, 2014 Ark. App. 73, we ordered rebriefing for noncompliance with Rule 4-2 of the Rules of the Arkansas Supreme Court and Court of Appeals.

them to a tree. Appellant picked them up, and she took George to Jaci's house in Magnolia

to "hide out." Billy said that he hid in a deer stand on property owned by appellant's parents,

in a motel in Texarkana, and then at Jaci's house in Magnolia. Billy testified that he initially

lied to the police about how the horse had died.

Jaci testified that appellant and Billy had asked her questions about the SAU horse

barn and horses and whether there were cameras. She also said that she walked Billy and

appellant through the stables and gave them information. She testified that no one on the

rodeo team had attempted to assault her.

Hayes McWhirter, an investigator with the Arkansas State Police, testified that, when

he spoke with George in December 2011, George denied any involvement. He said that

George later changed his story and admitted his involvement, but he did not mention

appellant. Investigator McWhirter said that Billy did mention appellant but left out a few

details.

Three employees from the McCurtain County Sheriff's Department testified that they

discovered the stolen horse trailer on November 3, 2011, at the home of Max and Debbie

Cleveland, appellant's aunt and uncle. The Clevelands' home is approximately fifteen

minutes away from appellant's home. Both are in McCurtain County, Oklahoma.[3]

Appellant's cousin, Mickie Carter, who lived with the Clevelands, testified that appellant and

Billy brought the stolen trailer filled with tack to their house on November 3, 2011.

---

[3]The four living horses were discovered tied to a tree with no food or water on November 15, 2011. Parts of the horse that Billy killed were discovered the day after Thanksgiving on land just north of appellant's property.

Appellant and Billy told Mickie that they had taken the trailer and tack in retaliation because a boy on the rodeo team had raped Jaci.

After the trial, a jury convicted appellant of eight counts of theft—two counts for the tack, one count for the horse trailer, and five counts for the five horses. At the jury's recommendation, the court sentenced appellant to consecutive sentences totaling sixty years' imprisonment.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Jackson v. State*, 375 Ark. 321, 324, 290 S.W.3d 574, 577 (2009). The test for determining sufficiency of the evidence is whether there is substantial evidence, direct or circumstantial, to support the verdict. *Johnson v. State*, 337 Ark. 196, 201, 987 S.W.2d 694, 698 (1999). Evidence is substantial if it is forceful enough to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Harmon v. State*, 340 Ark. 18, 22, 8 S.W.3d 472, 474 (2000). On appeal, we consider only the evidence that supports the verdict, viewing the evidence in the light most favorable to the State. *LeFever v. State*, 91 Ark. App. 86, 89, 208 S.W.3d 812, 815 (2005). We do not weigh the evidence presented at trial, as that is a matter for the fact-finder. *Freeman v. State*, 331 Ark. 130, 133, 959 S.W.2d 400, 402 (1998). Witness credibility is an issue for the fact-finder, who is free to believe all or a portion of any witness's testimony and whose duty it is to resolve questions of conflicting testimony and inconsistent evidence. *LeFever*, 91 Ark. App. at 89, 208 S.W.3d at 815.

A person commits theft of property if she knowingly takes or exercises unauthorized control over the property of another person with the purpose of depriving the owner of the

property. Ark. Code Ann. § 5-36-103(a)(1) (Supp. 2011). A person acts as an accomplice to a crime if she, with the purpose of promoting or facilitating the commission of an offense, solicits, advises, encourages, or coerces the other person to commit the offense; or aids, agrees to aid, or attempts to aid the other person in planning or committing the offense. Ark. Code Ann. § 5-2-403 (Repl. 2006). On appeal, appellant argues that the court erred in denying her motion for directed verdict because no credible evidence of her guilt was introduced. She argued that the only evidence presented to the jury linking her to the crimes was testimony that was inconsistent or that was provided by individuals with motives to lie.

It is black-letter law that determinations of the credibility of witnesses' testimony and the resolution of questions of conflicting testimony are for the jury. *Green v. State*, 2013 Ark. 497, at 20, ___ S.W.3d ___, ___. When the testimony is conflicting, this court does not pass upon the credibility of the witnesses and has no right to disregard the testimony of any witness after the jury has given it full credence if we cannot say with assurance that it was inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon. *Id*. The trier of fact is free to assess inconsistencies in witness testimony. *Id*.

Several witnesses testified that appellant planned the thefts, gave a map of the stables to Billy and George, provided the use of her truck for the thefts, assisted Billy and George in hiding the trailer at her aunt and uncle's home, directed Billy to kill one horse and hide the remaining four horses, and secured a place for Billy and George to hide at Jaci's after they tied the horses to trees. Leaving determinations of credibility and conflicting testimony with the jury and viewing the evidence in the light most favorable to the State, we hold that


substantial evidence supports the verdict.

Affirmed; remanded to correct sentencing order.

GLOVER and WHITEAKER, JJ., agree.

*John F. Stroud, III*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *LeaAnn J. Adams*, Ass't Att'y Gen., for appellee.